[Cite as *Comisford v. Erie Ins. Property Cas. Co.*, 2011-Ohio-1373.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| Krystal Comisford, et al., | : | |
| | : | |
| Plaintiffs-Appellees, | : | Case No: 10CA3 |
| | : | |
| v. | : | |
| | : | <u>DECISION AND</u> |
| Erie Insurance Property | : | <u>JUDGMENT ENTRY</u> |
| Casualty Company, et al., | : | |
| | : | |
| Defendants-Appellants. | : | File-stamped date: 2-11-11 |

_____

<u>APPEARANCES:</u>

Matthew J. Perry, Lamp, O'Dell, Bartram, Levy & Trautwein, P.L.L.C., Huntington, West Virginia, for Defendants-Appellants.

Steven L. Story and Robert W. Bright, Story Law Office, Pomeroy, Ohio, and Jeff Finley, Eachus & Finley, Gallipolis, Ohio, for Plaintiff-Appellee.

_____

Kline, J.:

**{¶1}** Erie Insurance Property Casualty Company, et al., (hereinafter "Erie") appeals the judgment of the Gallia County Court of Common Pleas, which granted summary judgment in favor of Krystal Comisford (f/k/a Krystal Hutchinson; hereinafter "Krystal"). Krystal's daughter, Xzandria Hutchinson (hereinafter "Xzandria"), died in a tragic fire at the home of Ronnie and Patty Hutchinson (together, the "Hutchinsons"). Erie insured the Hutchinsons at the time of the fire, and Krystal sought a declaratory judgment regarding the Hutchinsons' insurance coverage. Essentially, Krystal asked the trial court to determine whether the Hutchinsons' insurance policy covers the injuries that Xzandria suffered in the fire. Krystal and Erie filed competing motions for summary

judgment on the coverage issue, and the trial court found that the insurance policy does indeed cover Xzandria.

**{¶2}** Erie asserts several arguments on appeal. Initially, we will address Erie's argument that the trial court should have granted a continuance before ruling on the competing motions for summary judgment. Because Erie did not file an affidavit as required by Civ.R. 56(F), we disagree. Erie also contends that the trial court erred by granting summary judgment in favor of Krystal. After interpreting the insurance contract and construing the record in Erie's favor, we disagree. Instead, we find the following: (1) there are no genuine issues of material fact; (2) as a matter of law, Krystal is entitled to a declaratory judgment finding that the insurance policy covers Xzandria's bodily injuries; and (3) reasonable minds can come to just one conclusion, and that conclusion is adverse to Erie. Finally, Erie contends that the trial court erred by not granting Erie's own motion for summary judgment. Because this argument is moot, we decline to address it. See App.R. 12(A)(1)(c).

**{¶3}** Accordingly, we affirm the judgment of the trial court.

I.

**{¶4}** Krystal and Heath Hutchinson (hereinafter "Heath") are the parents of Xzandria and Orie Hutchinson (hereinafter "Orie"), and the Hutchinsons are Xzandria and Orie's paternal grandparents. On January 7, 2007, Xzandria died in a tragic fire at the Hutchinsons' home. (Orie was also injured in the fire, but his injuries are not at issue in the present case.) The Hutchinsons had insurance coverage through Erie at the time of the fire. (Hereinafter, we will refer to the insurance contract between Erie and the Hutchinsons as the "Policy.")

**{¶5}** As a result of Xzandria's death, Krystal filed the present case in both her individual capacity and as the administratrix of Xzandria's estate. Krystal's complaint includes the following five counts: (1) a survival claim against the Hutchinsons; (2) a wrongful death claim against the Hutchinsons; (3) a breach-of-contract claim against Erie; (4) a lack-of-good-faith claim against Erie; and (5) a declaratory judgment "construing the [Policy] and the terms, limitations, and exclusions contained in the [Policy]." Complaint at 6. The trial court stayed counts one through four pending a resolution of Krystal's request for a declaratory judgment, and the present appeal concerns only the issues raised in the declaratory-judgment count.

**{¶6}** In seeking a declaratory judgment, Krystal asked the court to declare whether the Policy covers the injuries that Xzandria suffered in the fire. Under the Policy, Erie promises to "pay all sums up to the amount shown on the **Declarations** which **anyone we protect** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** during the policy period. [Erie] will pay for only **bodily injury** or **property damage** covered by this policy." (Emphasis sic.) The Policy, however, contains the following exclusion from coverage: "**We** do not cover under *Bodily Injury Liability Coverage*, *Property Damage Liability Coverage* or *Personal Injury Liability Coverage:* * * * **Bodily injury** or **personal injury** to **you** and if **residents** of **your** household, **your** relatives, and persons under the age of 21 in **your** care or in the care of **your resident** relatives." (Emphasis sic.) (Hereinafter, we will refer to this exclusionary language as the "Policy Exclusion.") Essentially, Krystal and Erie disagree as to whether the Policy Exclusion applies to Xzandria's bodily injuries. Because Xzandria was five-years old at the time of the fire, it is undisputed that she was under

the age of 21. But the parties disagree as to whether Xzandria was (1) a resident of the Hutchinsons' household and/or (2) in the Hutchinsons' care.

## A. Proceedings in the Juvenile Court

{¶7}    It is undisputed that, starting in June 2006, the Hutchinsons had temporary custody of Xzandria. On June 9, 2006, the Gallia County Court of Common Pleas, Juvenile Division, granted the following motion: "Now come Ronnie and Patty Hutchinson, [who] hereby move[] this court for an Order granting them Temporary Custody of their two minor grandchildren to wit: Orie Hutchinson d.o.b. 1/22/2002 and Xzandria Hutchinson d.o.b. 7/5/2000. The grounds in support of this Motion are that circumstances have arisen in the life of the natural parents Heath and Krystal Hutchinson which make it impossible for them to care for the children at this time.

{¶8}    "The parents join in the request for this temporary change of custody."

{¶9}    Accordingly, the parties agree that Xzandria lived with the Hutchinsons for a period of time starting in June 2006. The parties disagree, however, as to when Xzandria stopped being a resident of the Hutchinsons' household.

{¶10}    On October 19, 2006, Krystal filed the following pro se motion in the juvenile court: "Now comes Krystal Hutchinson [who] hereby requests the Court to schedule a hearing for the purpose of [e]mergency visitation for my two minor children. Ronnie & Patty Hutchinson are refusing visitation for me with my children. I voluntarily signed over Temp. Custody and I am now stable enough to visit with my children and have custody returned * * *."

{¶11}    On October 23, 2006, Krystal filed another motion: "Here comes Krystal Hutchinson in the matter of a pro se Emergency Visitation order on Xzandria Summer

Hutchinson & Orie Nathanial Eugene Hutchinson to be <u>dismissed immediately</u> due to the fact I am able to have visitation with my children at this time. * * *." (Emphasis sic.) In one of her affidavits, Krystal stated that, shortly after she filed the October 19, 2006 motion, "the Hutchinsons' [sic] allowed the children to return home with [her] and [her] husband at [their] residence[.] * * * Thereafter, on October 23, 2006, the [juvenile] Court dismissed the case in its entirety[.]" December 3, 2009 Affidavit of Krystal Comisford at ¶7-8. And indeed, the juvenile court dismissed the "above styled action" in an October 23, 2006 entry.

{¶12}     After the fire, on April 2, 2007, the juvenile court entered the following ORDER GRANTING CUSTODY: "This matter came on before the Court upon the joint application of all concerned parties seeking a return of custody of the two minor children to wit: Orie Hutchinson * * * and Xzandria Hutchinson * * * to their nat[u]ral parents Heath and Krystal Hutchinson.

{¶13}     "The Court finds that there had previously been a voluntary transfer of custody of the minor children to the paternal grandparents Ronnie and Patty Hutchinson due to health problems in the parents['] family. It appears that the situation has resolved itself and all parties have indicated that the need for the grandparents to have custody no longer exists and that the best interests require that custody be returned to the parents.

{¶14}     "It is therefore ORDERED that custody of the minor children is hereby returned to * * * Heath and Krystal Hutchinson."

B. Affidavits and Answers to Interrogatories

{¶15}    In her initial affidavit, Krystal testified as to Xzandria's living arrangements at the time of the fire. As Krystal stated, "Xzandria resided with me, my husband and her brother * * * until her death; [and a]t the time of the fire at the Hutchinsons' residence on January 7, 2007, my children were visiting for the weekend with the grandparents and were not residents of that home[.]" December 3, 2009 Affidavit of Krystal Comisford at ¶9-10. Krystal further stated that "[a]ny items of the children which were left at the Hutchinsons' residence after October 23, 2006[,] were items which were not necessary for the children's health and well being. All necessary items were removed from the Hutchinsons' residence before the fire[.]" December 30, 2009 Affidavit of Krystal Comisford at ¶11.

{¶16}    In her answers to Erie's interrogatories, Krystal claimed (1) that she and Heath had legal custody of Xzandria on January 7, 2007; (2) that Xzandria was a resident of her household at the time of the fire; (3) that the last time Xzandria stayed with her overnight was January 4, 2007; and (4) that the last time she saw Xzandria was the day before the fire. Erie offered no evidence to rebut Krystal's claims regarding either the legal custody of Xzandria or Xzandria's living arrangements at the time of the fire.

C. Summary Judgment Proceedings

{¶17}    Both Krystal and Erie filed motions for summary judgment on the declaratory-judgment issue, and both parties based their motions, in part, on the juvenile-court proceedings. Erie claimed that the Hutchinsons had temporary custody of Xzandria from June 9, 2006 until April 2, 2007 – the date on which the juvenile court returned custody of Xzandria to Heath and Krystal. And by claiming that the Hutchinsons had

custody of Xzandria, Erie maintained that Xzandria was a "resident" of the Hutchinsons' household on January 7, 2007. Krystal's motion for summary judgment, however, argued that Krystal and Heath regained legal custody of Xzandria on October 23, 2006 – the date on which the juvenile-court dismissed the temporary-custody proceedings. In the alternative, Krystal argued that the juvenile court proceedings were void ab initio because no complaint was ever filed in the juvenile court. For that reason, Krystal argued that the Hutchinsons *never* had custody of Xzandria and that Xzandria was *always* in the custody of Krystal and Heath. Under either of her alternative arguments, Krystal argued that the Hutchinsons did not have custody of Xzandria on January 7, 2007, and, therefore, Xzandria was not a resident of the Hutchinsons' household at the time of the fire.

{¶18}    Krystal also made arguments based on her submitted evidence, which, according to Krystal, demonstrated that Xzandria was not a resident of the Hutchinsons' household on January 7, 2007.

{¶19}    The trial court held a hearing on the competing motions for summary judgment. "[I]n chambers prior to the hearing," Erie indicated that it "wished to call two witnesses to present testimony[.]" February 10, 2010 Journal Entry at 1. The trial court, however, did not allow the two witnesses (presumably the Hutchinsons) to testify at the hearing. During the hearing, Erie's attorney made the following statement: "* * * I understand that at this point and time the Court's not at liberty to take this under issue, but prior to the hearing I raised the fact that Ronnie and Patty Hutchinson factually completely dispute uh, Krystal[]'s affidavit as to where the children were residing up through the point and time of the fire. Um, if the Court finds that to be a determinative

issue um, then I would move that the Court withhold its ruling to allow me to secure the deposition testimony of either or both of the grandparents to submit in supplementation to the initial motion because clearly there is an issue on whether or not the, the children were in fact back to their mother's home." Transcript of Proceedings at 33. On appeal, Erie contends that this statement amounted to a request for a continuance.

**{¶20}** Krystal opposed Erie's request. As one of Krystal's attorneys said, "Why bring this up now? You know, we have to, you have to rely on your decision based on what you have before it. Why were they not deposed before? Why not get an affidavit? * * * We had a briefing schedule, we're here for this. We had an affidavit in our very first motion we filed and then we put, and then a supplemental affidavit in the second one. We got no affidavits, no [Civ.R. 56(C)] evidence in their original motion for summary judgment nor in their response. And [Civ.R. 56(C)] says, it tells you what, that the, the uh, the average party prior to the day of hearing may, prior to the day of hearing, yesterday uh, may serve and file [appropriate evidence] to show there's a genuine issue to any fact. I mean [they] had up until yesterday to give an affidavit and it's not here." Transcript of Proceedings at 34-35.

**{¶21}** The trial court did not explicitly rule on Erie's request for a continuance. Instead, the trial court (1) granted Krystal's motion for summary judgment and (2) denied Erie's motion for summary judgment. The trial court found that the juvenile court proceedings were "void ab initio" and, as a result, that the Hutchinsons never had custody of Xzandria. Furthermore, based on the submitted evidence, the trial court found that Xzandria was not a "resident" of the Hutchinsons' household. For these reasons, the trial court found that Xzandria "was not excluded under the Erie policy in

question." February 10, 2010 Journal Entry at 11. And finally, under Civ.R. 54(B), the trial court certified that "there is no just reason for delay." February 10, 2010 Journal Entry at 12.

## D. Assignments of Error

{¶22} Erie appeals and asserts the following three assignments of error: I. "The trial court erred in granting summary judgment in favor of the Plaintiff-Appellee." II. "The Trial court erred in failing to grant summary judgment for the Defendant-Appellant." And, III. "The trial court erred in failing to grant the Defendant-Appellant a continuance of the hearing on the cross motions for summary judgment in order to secure testimony to rebut the affidavits of Plaintiff-Appellee."

## II.

{¶23} Because its resolution could impact our analysis of Erie's first-and-second assignments of error, we will review Erie's third assignment of error out of order. In its third assignment of error, Erie contends that the trial court should have granted Erie a continuance so that Erie could "compel the deposition testimony of Ronnie and Patty Hutchinson[.]" Brief for Appellant at 34.

{¶24} There is some dispute as to whether Erie actually requested a continuance. But we will assume, without deciding, that it did. And although the trial court did not explicitly rule on the request for a continuance, "motions that a trial court fails to explicitly rule upon are deemed denied once a court enters final judgment." *Savage v. Cody-Ziegler, Inc.*, Athens App. No. 06CA5, 2006-Ohio-2760, at ¶28.

{¶25} "Pursuant to Civ.R. 56(F), a party may seek additional time in which to develop the facts needed to adequately oppose a motion for summary judgment. * * *

Absent an abuse of discretion, an appellate court will not reverse a trial court's ruling on a Civ.R. 56(F) motion." *Ford Motor Credit Co. v. Ryan*, Franklin App. Nos. 09AP-501, 09AP-555, 10AP-263, & 10AP-274, 2010-Ohio-4601, at ¶100, citing *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, at ¶9 (other internal citations omitted). An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶26}** Civ.R. 56(F) provides: "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

**{¶27}** "Civ.R. 56(F) requires the party seeking a continuance to submit an affidavit stating sufficient reasons why the party cannot present facts essential to justify the party's opposition to the summary judgment motion." *Perpetual Fed. Sav. Bank v. TDS2 Property Mgt., LLC*, Franklin App. No. 09AP-285, 2009-Ohio-6774, at ¶13, citing *ABN AMRO Mortgage Group, Inc. v. Roush*, Franklin App. No. 04AP-457, 2005-Ohio-1763, at ¶22. "When no affidavit is presented in support of a motion for extension under Civ.R. 56(F), a court may not grant an extension pursuant thereto." *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278, at ¶42, citing *Vilardo v. Sheets*, Clermont App. No. CA2005-09-091, 2006-Ohio-3473, at ¶29. See, also, *St. Joseph's Hosp. v. Hoyt*, Washington App. No. 04CA20, 2005-Ohio-480, at ¶24; *Coleman v.*

*Beachwood*, Cuyahoga App. No. 92399, 2009-Ohio-5560, at ¶12.  Here, it is undisputed that Erie failed to submit the required affidavit.  Therefore, the trial court did not have the authority to grant a continuance pursuant to Civ.R. 56(F), and we cannot find that the trial court abused its discretion.

**{¶28}**     Accordingly, we overrule Erie's third assignment of error.

III.

**{¶29}**     Before addressing Erie's remaining assignments of error, we must note the following procedural issue.  In its appellate brief, Erie has failed to separately argue its first-and-second assignments of error as required by App.R. 16(A)(7).  Instead, Erie has presented just one argument in support of both assignments of error.  Under App.R. 12(A)(2), we may choose to disregard any assignment of error that an appellant fails to separately argue.  Therefore, we could exercise our discretionary authority to summarily overrule Erie's first-and-second assignments of error.  See *Newman v. Enriquez*, 171 Ohio App.3d 117, 2007-Ohio-1934, at ¶18; *Mtge. Electronic Registrations Sys. v. Mullins*, 161 Ohio App.3d 12, 2005-Ohio-2303, at ¶22, citing *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 186; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 677, fn. 3.  In the interest of justice, however, we choose to address Erie's first assignment of error.  Furthermore, because we find that the trial court did not err in granting summary judgment for Krystal, we need not address Erie's second assignment of error.  See App.R. 12(A)(1)(c).

**{¶30}**     In its first assignment of error, Erie contends that the trial court erred by granting Krystal's motion for summary judgment.  "Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth

in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, at ¶8. Summary judgment is appropriate only when the following have been established: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). See, also, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146; *Grimes v. Grimes*, Washington App. No. 08CA35, 2009-Ohio-3126, at ¶14. In ruling on a motion for summary judgment, the court must construe the record and all inferences that arise from it in the opposing party's favor. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 535, 1994-Ohio-531, superseded by statute on other grounds.

**{¶31}** The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See, also, *Dresher* at 294-295; *Grimes* at ¶15.

**{¶32}** "In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail." *Grimes* at ¶16 (citation omitted). "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 412.

See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809; *Grimes* at ¶16.

**{¶33}** The sole question before us is whether the Policy covers Xzandria's bodily injuries – or, put another way, whether Xzandria falls under the Policy Exclusion. "[T]he interpretation of an insurance contract is a matter of law, which we review de novo." *Siegfried v. Farmers Ins. of Columbus, Inc.*, 187 Ohio App.3d 710, 2010-Ohio-1173, at ¶11, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 1995-Ohio-214. "In interpreting an insurance policy, the court's role is to give effect to the intent of the parties to the agreement. In doing so, [w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Eastley v. Volkman*, Scioto App. Nos. 09CA3308 & 09CA3309, 2010-Ohio-4771, at ¶50, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶11 (internal quotations omitted) (alteration sic). However, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, syllabus.

**{¶34}** The Policy Exclusion states the following: "**We** do not cover * * *: **Bodily injury** or **personal injury** to **you** and if **residents** of **your** household, **your** relatives, and persons under the age of 21 in **your** care or in the care of **your resident** relatives."

(Emphasis sic.)  In part, the Policy defines a resident as "a person who physically lives with **you** in **your** household."  (Emphasis sic.)  Erie contends that the Policy does not cover Xzandria because, at the time of the fire, she was either (1) a resident of the Hutchinsons' household or (2) in the Hutchinsons' care.  In contrast, Krystal contends that the Policy Exclusion does not apply because Xzandria was neither (1) a resident of the Hutchinsons' household nor (2) in the Hutchinsons' care at the time of the fire.

### A. Was Xzandria a Resident of the Hutchinsons' Household?

**{¶35}**      As to whether Xzandria was a resident of the Hutchinsons' household, Erie and Krystal base much of their respective arguments on the jurisdiction (or lack thereof) of the juvenile court.  Essentially, Erie contends that the Hutchinsons had temporary custody of Xzandria until April 2, 2007 – the date on which the juvenile court returned custody of Xzandria to Heath and Krystal.  And for that reason, Erie argues that Xzandria was a "resident" of the Hutchinsons' household at the time of the fire.  See R.C. 2151.06 ("[A] child has the same residence or legal settlement as his parents, legal guardian of his person, or his custodian who stands in the relation of loco parentis.").  Krystal, however, argues that the juvenile court never had jurisdiction over the matter because a complaint was not filed pursuant to Juv.R. 14 and R.C. 2151.27.  In the alternative, Krystal argues that the April 2, 2007 order is a nullity because the juvenile court divested itself of jurisdiction by dismissing the case on October 23, 2006.  For these reasons, Krystal argues that the Hutchinsons did not have temporary custody of Xzandria and, as a result, that Xzandria was not a resident of the Hutchinsons' household at the time of the fire.

**{¶36}** Here, we need not comment on the juvenile court's jurisdiction (or lack thereof) to resolve Erie's first assignment of error. Instead, we believe that Erie's first assignment of error turns on the plain language of R.C. 2151.011(B)(53). Under R.C. 2151.011(B)(53), "'Temporary custody' means legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, *if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement.*" (Emphasis added.) It is undisputed that Krystal, Heath, and the Hutchinsons agreed that the Hutchinsons would have temporary custody of Xzandria. Thus, under the plain language of R.C. 2151.011(B)(53), the parties could terminate their agreement for temporary custody at any time. And in her December 3, 2009 affidavit, Krystal stated that the "Hutchinsons[] allowed the children to return home with [her] and [her] husband" in October 2006. Furthermore, in her answers to Erie's interrogatories, Krystal stated (1) that she had legal custody of Xzandria at the time of the fire and (2) that the Hutchinsons "let Xzandria * * * come home with [her] permanently" that October. Thus, Krystal's evidence demonstrates (1) that the parties terminated their temporary custody agreement in October 2006; (2) that Xzandria lived with Krystal and Heath in January 2007; and (3) that Xzandria was merely visiting the Hutchinsons' household at the time of the fire. (Finally, we note that the juvenile court dismissed the temporary-custody case on October 23, 2006. This action comports with Krystal's evidence regarding the end of temporary custody.)

**{¶37}** Erie produced nothing to rebut Krystal's evidence regarding either (1) the end of temporary custody or (2) Xzandria's living arrangements. Thus, Erie failed to carry its burden under Civ.R. 56(C). See, e.g., *Whitley v. River's Bend Health Care*, 183 Ohio

App.3d 145, 2009-Ohio-3366, at ¶9 (stating that "the onus shifts to the nonmoving party to provide rebuttal evidentiary materials"); *Trout v. Parker* (1991), 72 Ohio App.3d 720, 723 ("[O]nce the moving party has properly carried its burden of production, the nonmoving party then has a burden of rebuttal to supply evidentiary materials supporting the contrary position."). In other words, Erie failed to create a genuine issue of material fact regarding either (1) the legal custody of Xzandria or (2) Xzandria's living arrangements at the time of the fire. Accordingly, no reasonable mind could conclude that Xzandria was a resident of the Hutchinsons' household under either the Policy or applicable Ohio law. See R.C. 2151.06; *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, syllabus ("* * * A 'resident of your household' refers to one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor."); see, generally, *Entenman v. Auto-Owners Ins. Co.* (2000), 136 Ohio App.3d 541, 547-58 (finding that the term "resident" should be construed liberally "in favor of the claimant seeking coverage").

## B. Was Xzandria in the Care of the Hutchinsons?

**{¶38}** Next, we must determine whether Xzandria was in the Hutchinsons' care at the time of the fire. As used in the Policy Exclusion, the plain and ordinary meaning of "care" is the "responsibility for or attention to safety and well-being[.]" Webster's Third New International Dictionary (2002). Clearly, the Hutchinsons had the responsibility for Xzandria's safety and well-being while she stayed at their home. And for that reason, Erie argues that the Policy does not cover Xzandria's bodily injuries. Krystal, however, contends that Xzandria's bodily injuries *are* covered because "[t]he term 'if residents of

your household' applies to both the relatives and to the persons under the age of 21 in your care[.]"  Plaintiff/Appellee's Appeal Brief at 15.  In other words, Krystal argues that, under the Policy Exclusion, *both* of the following must apply: (1) Xzandria was in the Hutchinsons' care at the time of the fire *and* (2) Xzandria was a resident of the Hutchinsons' household.

**{¶39}** We find the language of the Policy Exclusion to be ambiguous.  In relevant part, the Policy Exclusion applies "to **you** and if **residents** of **your** household, **your** relatives, and persons under the age of 21 in **your** care or in the care of **your resident** relatives."  (Emphasis sic.)  Here, one could reasonably conclude that, for the Policy Exclusion to apply, *only* "your relatives" need also be "residents of your household." Under this interpretation, the clause "if residents of your household" applies *only* to "your relatives" and has *no bearing* on "persons under the age of 21 in your care[.]" Although this is a reasonable interpretation, one could just as reasonably conclude that the clause "if residents of your household" applies to *both* categories in the subsequent list – that is, it applies to both "your relatives" *and* to "persons under the age of 21 in your care or in the care of your resident relatives."  (We note that the Policy's definition of "**anyone we protect**" seems to support Krystal's interpretation of the Policy Exclusion.  As defined, the Policy protects only "**you**" and **"residents** of **your**" household.  According to Erie, "[t]he rationale of [the Policy Exclusion] is clear – if you are insured under the Policy, you are not also entitled to seek recovery as a third party claimant."  Defendant Erie Insurance Exchange's Motion For Summary Judgment at 9. Based on this rationale, it seems more likely that the Policy Exclusion would apply only to residents of the household; i.e., anyone that the policy protects.)  Because we believe

that both interpretations of the Policy Exclusion are reasonable, we find that the Policy Exclusion is ambiguous.

**{¶40}**     "If provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, at ¶28, quoting *King* at syllabus.  "Moreover, 'an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.'" *Ohio Govt. Risk Mgt. Plan* at ¶28, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665 (emphasis sic).  Here, because the Policy Exclusion "is susceptible of more than one interpretation, it must be construed against" Erie.  *Ohio Govt. Risk Mgt. Plan* at ¶28.  Specifically, we must find that "persons under the age of 21 in your care" need also be "residents of your household."

**{¶41}**     As we stated earlier, no reasonable mind could conclude that Xzandria was a resident of the Hutchinsons' household at the time of the fire.  And because she was not a resident of the Hutchinsons' household, Xzandria was not in the "care" of the Hutchinsons as contemplated by the Policy Exclusion.  Therefore, as a matter of law, we find that the Policy Exclusion does not apply to Xzandria's bodily injuries.  In other words, the Policy covers Xzandria.

C. Summary Judgment Conclusion

**{¶42}**     After construing the record and all inferences therefrom in Erie's favor, we find the following: (1) there are no genuine issues of material fact; (2) as a matter of law, Krystal is entitled to a declaratory judgment finding that the Policy covers Xzandria's

bodily injuries; and (3) reasonable minds can come to just one conclusion, and that conclusion is adverse to Erie.

**{¶43}**     Accordingly, we overrule Erie's first assignment of error.  Having overruled Erie's first-and-third assignments of error, and having found its second assignment of error moot, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, P.J., concurring:

**{¶44}** I concur in judgment and opinion except for ¶36, which seems to conclude that a party to a consent judgment can unilaterally terminate a court's agreed judgment entry by simply and extrajudicially revoking their previously granted consent. In my view, R.C. 2151.011(B)(53) would allow those who have executed an extrajudicial agreement to unilaterally terminate the temporary custody arrangement. However, once the parties have invoked the authority of the court to implement their agreement, only a subsequent court order, by consent or otherwise, can terminate the grant of temporary custody.

**{¶45}** Nonetheless, because the court's order of October 23, 2006 terminated the grant of temporary custody and thus, by operation of law, custody returned to the natural parents, I agree there is no summary judgment evidence that Xzandria was a resident of her grandparents home on the night of the fire.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED. Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Harsha, P.J.: Concurs in Judgment and Opinion with Opinion.
Abele, J.: Concurs in Judgment and Opinion.

For the Court

BY:_____
    Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**