[Cite as *Artisan & Truckers Cas. Co. v. United Ohio Ins. Co.*, 2019-Ohio-3.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

ARTISAN & TRUCKERS CASUALTY CO.   :

     Plaintiff-Appellee,            :          Case No. 18CA3639

v.                               :

                                    DECISION AND
UNITED OHIO INSURANCE CO.     :      JUDGMENT ENTRY

     Defendant-Appellant.       :

APPEARANCES:

Josh L. Schoenberger and Susan S. R. Petro, Williams & Schoenberger Co. LLC, Columbus, Ohio, for appellant.

Richard M. Garner and Jeffery S. Maynard, Collins, Roche, Utley & Garner, Dublin, Ohio, for appellee.

Hoover, P.J.

{¶1}    Defendant-appellant, United Ohio Insurance Company ("United") appeals the judgment of the Ross County Court of Common Pleas, which granted declaratory judgment in favor of plaintiff-appellee, Artisan and Truckers Casualty Company ("Progressive"). In this case, Progressive sought a declaratory judgment that its insurance policy was in excess of United's policy in the matter of *Sabrina Stiffler, Administratrix of the Estate of Christopher Stiffler, Deceased, et al. v. Stevens Enterprises of Ohio, LLC, et al.*, Jackson County, Ohio Court of Common Pleas, Case Number 15 PI 0014 ("Underlying Litigation"). There, United and Progressive agreed to split the $1,350,000.00 indemnity payment—with each paying $675,000.00—but reserved the right to seek contribution from each other for amounts paid in excess of their respective policies. The trial court ultimately found that United's policy provided

primary coverage for the liability claims while Progressive's policy provided excess coverage. Since both policies had a limit of $1 million, United was responsible for $1 million of the $1,350,000.00; and Progressive was responsible for the remainder. Therefore, the trial court ordered United to reimburse Progressive the amount of $325,000.00 plus statutory interest at a rate of 3% per annum beginning September 28, 2016.

{¶2}    On appeal, United contends that its policy and Progressive's policy provided pro-rata coverage with respect to the Underlying Litigation and that both parties were responsible for a proportionate share of the indemnity payment. According to United, the trial court improperly construed Progressive's policy instead of applying the language as written. Progressive argues that the trial court's ruling was consistent with the intent of the parties to the Progressive policy and consistent with common industry practice.

{¶3}    For the reasons that follow, we find that Progressive's policy provided excess coverage in the Underlying Litigation. Accordingly, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶4}    Both parties have agreed to the following stipulated facts:

1.      [Progressive] is licensed and authorized to offer and sell insurance in the State of Ohio.

2.      [United] is licensed and authorized to offer and sell insurance in the State of Ohio.

3.      August 15, 2014, Progressive issued Policy No. 03241868-0 to David D. Stevens/Stevens Enterprises ("Stevens"), effective for the policy period of August 15, 2014 to August 15, 2015 ("Progressive Policy"). * * *

4.     Pursuant to the Progressive Policy, a 1999 International 900 Tractor, VIN 2HSFTASR8XC041697 ("Tractor")[1] and a 1986 Strick Trailer, VIN 1512E9483GE278283 ("Trailer") were included on the Auto Coverage Schedule of the Progressive Policy.

5.     The next day, August 16, 2014, United issued Policy No. CPP 0017890 to Stevens, effective for the policy period of August 16, 2014 to August 16, 2015 ("United Policy"). * * *

6.     Pursuant to the United Policy, the Tractor was included on the Schedule of Covered Autos of the United Policy.[2] The Trailer was not included on the United Policy's Schedule of Covered Autos.

7.     At all times pertinent to this case, the Tractor and Trailer were owned by [Stevens].

8.     On November 11, 2014, the Tractor and Trailer, while being driven by James Ostrander ("Ostrander") in the course and scope of his employment for Stevens, was involved in an automobile accident that allegedly caused the death of Christopher Stiffler ("Stiffler") in Ross County, Ohio ("Accident").

9.     Stiffler's legal representative filed *Sabrina Stiffler, Administratrix of the Estate of Christopher Stiffler, Deceased, et al. v. Stevens Enterprises of Ohio, LLC, et al.*, No. 15 PI 0014, in the Court of Common Pleas for Jackson County, Ohio against Stevens and Ostrander seeking damages arising from the Accident ("Underlying Litigation").

---

[1] The Progressive Policy refers to this vehicle as a "1999 Intl 990," and (OP 8, Exhibit A at 3).
[2] The United Policy refers to this vehicle as a "1999 International 9900 Tractor." (OP 8, Exhibit B at 4).

10.     Stevens and Ostrander sought coverage under both the Progressive Policy and the United Policy for the claims asserted against each of them in the Underlying Litigation.

11.     The claims against Stevens and Ostrander in the Underlying Litigation were resolved through a confidential settlement agreement * * * ("Settlement Agreement").

12.     Pursuant to the Settlement Agreement, Progressive and United each paid $675,000 to settle the claims against Stevens and Ostrander in the Underlying Litigation—for a total of $1,350,000.00. However, Progressive and United reserved the right to seek contribution from each other for any amounts either paid that were believed to be in excess of what their respective policies required.

(Joint Stipulation of Facts).

{¶5}    On November 4, 2016, Progressive filed a Complaint for Declaratory Judgment in the Ross County Court of Common Pleas, which asked the court to: (1) declare that the Progressive Policy was in excess to the United Policy relative to coverage for claims for indemnity with respect to the Underlying Litigation; and (2) award Progressive damages in the amount of $325,000 plus interest from the date of settlement. (OP 1). In support of its argument, Progressive attached a copy of the Progressive Policy, which includes an "Automatic Termination" provision and an "Other Insurance" provision.

{¶6}    The Automatic Termination provision states:

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date of the other insurance.

(Emphasis sic.) (OP 8, Exhibit A at 26).

{¶7}     Additionally, the Other Insurance provision provides:

For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be in excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** which is specifically described on the **declarations page** is a **trailer**, this policy will be primary only if the **trailer** is attached to an **insured auto** that is a power unit you own and is specifically described on the **declarations page**, and excess in all other circumstances.

(Emphasis sic.) (*Id.* at 24).

{¶8}     The Progressive Policy also contains a General Definitions provision, which states in relevant part:

4.     "Declarations" or "declarations page" means the document prepared by us listing your policy information, which may include the types of coverage you have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.

5.     "Insured auto" or "your insured auto" means:

a.     Any auto specifically described on the declarations page * * *.

* * *

15.     "Trailer" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

\* \* \*

17.      "You" \* \* \* refer[s] to the named insured shown on the declarations page. (Emphasis deleted.) (*Id.* at 14-16).

{¶9}     Ultimately, the trial court found that the United Policy provided primary coverage for the liability claims while the Progressive Policy provided excess coverage. Since both policies had a liability limit of $1 million, United was responsible for $1 million of the $1,350,000.00 indemnity payment in the Underlying Litigation; and Progressive was responsible for the remainder. (OP 8, Exhibit A at 2 & Exhibit B at 3). Therefore, the trial court granted declaratory judgment in favor of Progressive and ordered United to reimburse Progressive the amount of $325,000.00 plus statutory interest at a rate of 3% per annum beginning September 28, 2016, the date of the settlement.

{¶10}   United timely appealed.

## II. Assignments of Error

{¶11}   On appeal, United assigns the following errors for our review:

First Assignment of Error:

> The trial court erred in holding that the Progressive Policy provides excess
>
> liability coverage for the Underlying Litigation.

Second Assignment of Error:

> The trial court erred in construing the Progressive Policy's language rather than
>
> applying it as written.

Third Assignment of Error:

> The trial court erred in holding that United is required to pay $325,000.00 in
>
> contribution plus interest to Progressive.

### III. Law and Analysis

### A. Standard of Review

{¶12}   "[T]he interpretation of an insurance contract is a matter of law, which we review de novo." *Comisford v. Erie Property Cas. Co.*, 4th Dist. Gallia No. 10CA3, 2011-Ohio-1373, quoting *Siegfried v. Farmers Ins. of Columbus, Inc.*, 187 Ohio App.3d 710, 933 N.E.2d 815, 2010-Ohio-1173, at ¶ 11, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 1995-Ohio-214. "In interpreting an insurance policy, the court's role is to give effect to the intent of the parties to the agreement. In doing so, [w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Eastley v. Volkman*, Scioto App. Nos. 09CA3308 & 09CA3309, 2010-Ohio-4771, at ¶ 50, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11 (internal quotations omitted) (alteration sic).

### B. The Progressive Policy Provided Excess Coverage in the Underlying Litigation

{¶13}   We address United's first and second assignments of error in tandem.

{¶14}   In its first assignment of error, United alleges that the trial court erred in finding that the United Policy provided primary liability coverage while the Progressive Policy provided excess coverage for the Underlying Litigation. According to United, both parties were responsible for a proportionate share of the indemnity payment because the United Policy and the Progressive Policy provided pro-rata coverage.

{¶15} In its second assignment of error, United alleges that the trial court improperly construed the language of the Progressive Policy rather than applying it as written. Based on the clear and unambiguous language of the Progressive Policy's Other Insurance provision, United argues that the Progressive Policy provided primary coverage for the Trailer. Once again, the Other Insurance provision states that:

> [I]f the **insured auto** which is specifically described on the **declarations page** is a **trailer**, this policy will be primary only if the **trailer** is attached to an **insured auto** that is a power unit you own and is specifically described on the **declarations page**, and excess in all other circumstances.

(Emphasis sic.) (OP 8, Exhibit A at 22). Since the phrase "insured auto," as used in the Progressive Policy, is defined as "[a]ny auto specifically described on the declarations page," United argues that the Progressive Policy provided primary coverage for the Trailer since the Tractor remained listed on the policy's declarations page. (*Id.* at 3 & 14). However, United concedes that the August 16, 2014 issuance of the United Policy covering the Tractor terminated Progressive's coverage of the Tractor under Progressive's Automatic Termination provision. (Appellant's Brief at 7).

{¶16} In contrast, Progressive believes that the trial court properly applied the Progressive Policy in a way that was consistent with the language of the policy and the intent of the parties. According to Progressive, the purpose of the Other Insurance provision was to render trailer coverage in excess unless the power unit pulling the trailer was an auto owned by the policyholder and insured only by Progressive. This is consistent with other provisions of the Progressive Policy, which provide that "[a]n insured auto and any trailer or trailers attached thereto shall be deemed to be one auto with respect to our Limit of Liability." (Emphasis

deleted.) (OP 8, Exhibit A at 20). Progressive agrees that United's Policy, which it issued on August 16, 2014 and which covered the Tractor, terminated Progressive's coverage of the Tractor under Progressive's Automatic Termination provision. Since the Progressive Policy no longer covered the Tractor at the time of the Accident, Progressive alleges that coverage for the Trailer was rendered excess.

{¶17} Insurance policies cannot be read in an overly circumscribed fashion. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.32 166, 172, 436 N.E.2d 1347 (1982). "One may not regard only the right hand which giveth, if the left hand also taketh away. The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated parts thereof." *Id.*, citing *Stickel v. Excess Ins. Co. of Am.*, 136 Ohio St. 49, 53, 23 N.E.2d 839 (1939), and *Germania Fire Ins. Co. v. Schild*, 69 Ohio St. 136, x, 68 N.E. 706 (1903). "Since courts must examine the insurance policy as a whole to determine the parties' intentions, it follows that courts must also examine the policy as a whole when determining whether a word or phrase of the policy is ambiguous." *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18N.E.3d 410, ¶ 14. Further, "[a] policy should not be read so as to extend coverage to absurd lengths or to be inconsistent with logic or the law." *Ryan v. Hartford Co.*, 12th Dist. Butler No. CA2000-10-210, 2001 Ohio App, LEXIS 2772, at *12 (June 25, 2001), citing *Lovewell v. Physicians Ins. Co. of Ohio*, 79 Ohio St.3d 143, 148, 679 N.E.2d 1119 (1997), and *West v. McNamara*, 159 Ohio St. 187, 197, 111 N.E.2d 909 (1953).

{¶18} We recognize that the phrase "insured auto" as used in the Progressive Policy is defined as "[a]ny auto specifically described on the declarations page." (OP 8, Exhibit A at 14); and if we were read the Other Insurance provision in isolation, it would appear that the Tractor remained an "insured auto" because it was still listed on the declarations page at the time of the

Accident. However, we find that this interpretation produces an absurd result. *See United Ohio Ins. Co. v. Calvalege*, 3d Dist. Allen No. 1-93-36, 1993 Ohio App. LEXIS 6148, at *8 (Dec. 13, 1993) ("Although the language in the policy may be clear and unambiguous, it must nevertheless be considered in light of the fact that it is part of a policy of insurance."). "The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *German Fire Ins. Co. v Roost*, 55 Ohio St. 581, 45 N.E. 1097 (1897), paragraph one of the syllabus. When the disputed language is considered as part of the insurance contract as a whole, especially in light of the Automatic Termination provision, it is clear that the meaning United urges cannot be correct.

{¶19} The purpose of the Other Insurance provision was to provide primary trailer coverage only in circumstances where the power unit pulling the trailer was an auto owned by the policyholder and insured by Progressive. Although the Tractor remained on the Progressive Policy's declarations page, both parties agree that the issuance of the United Policy on August 16, 2014 terminated Progressive's coverage of the Tractor under Progressive's Automatic Termination provision. (OP 8, Exhibit A at 3; Appellant's Brief at 7). Since the Trailer's power unit was no longer insured by Progressive, it logically follows from the language and intent of the Progressive Policy that the trailer coverage was rendered in excess. *See Calvalege* at *9. Therefore, we find that the United Policy provided primary liability coverage while the Progressive Policy provided excess coverage for the Underlying Litigation.

{¶20} Accordingly, we overrule United's first and second assignments of error.

## C. Progressive Is Entitled to Reimbursement from United in the Amount of $325,000 Plus Statutory Interest

{¶21}  In its third assignment of error, United alleges that the trial court erred in holding that United is required to pay $325,000.00 in contribution plus interest to Progressive. According to United, the trial court should have found that United and Progressive's policies were co-primary and provided pro-rata coverage with respect to the Underlying Litigation. Therefore, United argues that the parties properly split the $1,350,000.00 indemnity payment, with each paying $675,000.00.

{¶22}  However, we found that Progressive's coverage was in excess, not co-primary. Since both policies had a limit of $1 million, we find that United was responsible for $1 million of the $1,350,000.00 indemnity payment; and Progressive was responsible for the remaining $350,000.00. (OP 8, Exhibit A at 2 & Exhibit B at 3). Since Progressive paid in excess of $350,000.00, it is entitled to reimbursement by United. Therefore, we affirm the damages award in the amount of $325,000.00 plus statutory interest at a rate of 3% per annum beginning September 28, 2016, the date of the Settlement Agreement.

{¶23}  Accordingly, we overrule United's third assignment of error.

## IV. Conclusion

{¶24}  Having overruled all three of United's assignments of error, we therefore affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.:
Abele, J.:

For the Court,

By: _____
        Marie Hoover
        Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**