[Cite as *State v. Sinclair*, 2020-Ohio-4860.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019CA00180 |
| THOMAS A. SINCLAIR, II. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

| CHARACTER OF PROCEEDING: | Criminal appeal from the Canton Municipal Court Case No. 2019TRC 04926 |
|---|---|
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 8, 2020 |
| APPEARANCES: | |

For Plaintiff-Appellee

KRISTEN BATES AYLWARD
CANTON LAW DIRECTOR

JASON P. REESE
CANTON CITY PROSECUTOR

KATIE ERCHICK GILBERT
Deputy Chief Counsel
218 Cleveland Avenue S.W.
Box 24218
Canton, OH 44701-4218

For Defendant-Appellant

THOMAS A. SINCLAIR, II.
2440 Glenmont Road N.W.
Canton, OH 44708

*Gwin, J.*

{¶1} Defendant-appellant Thomas A. Sinclair, II ["Sinclair"] appeals his conviction and sentence after a jury trial in the Canton Municipal Court, Stark County, Ohio.

*Facts and Procedural History*

{¶2} Sergeant Shane Cline and Deputy Christian Paris of the Stark County Sheriff's Office were conducting a Violent Interdiction Patrol ["VIP"] on June 29, 2019. At approximately 1:00 a.m. the pair was traveling northbound on Whipple Avenue. The roadway was under construction at that time with manholes protruding from the roadway every 30 yards where the road surface had been removed. Sergeant Cline observed a car driving all the way over so that the manholes were on the right side of the car's passenger side tires. The car made a left turn onto Thirteenth Street, Northwest. Sergeant Cline and Deputy Paris continued north on Whipple and turned left onto Fourteenth Street. The pair cut through an alley, tuned left onto Thirteenth Street, and waited at the intersection for the car to come past. As the pair saw the car traveling west on Thirteenth Street, they noticed that the car's headlights were not turned on.

{¶3} The in-cruiser video camera was full. However, the interaction was recorded on Deputy Paris's body camera. Sergeant Cline is seen speaking to the driver of the car who was identified as Sinclair. Sergeant Cline asked Sinclair if he lived in the area. Sinclair responded no, he had pulled over to make a phone call. Sinclair told the deputy that he had turned his headlights off while he was in the process of pulling off the roadway to park the car. Sergeant Cline testified that he could smell the odor of alcohol coming from the car. He further testified that Sinclair's eyes were bloodshot and really

watery. Sinclair told Sergeant Cline that he had come from a nearby restaurant where he had two beers. Sergeant Cline asked Sinclair to step out of the car. He continued to smell alcohol and also believed that he could smell marijuana. Sinclair told the deputies that he did not smoke marijuana and did not have any on his person or in his car. The deputies did not find any marijuana. Sergeant Cline testified that as he continued to speak to Sinclair, he could notice slurred speech and a slight swaying. When asked by Sergeant Sinclair to perform the Standardized Field Sobriety Tests ["SFST"] Sinclair said that he was not comfortable with that, preferring instead to do a "professional" breath test. Sinclair was placed under arrest and transported to the Stark County Jail for testing on the Breathalyzer 8000. The test revealed Sinclair had a Blood Alcohol Content ["BAC"] of 0.112.

{¶4} Sinclair was originally tried on the charge of Operating a Motor Vehicle While Under the Influence of Alcohol ["Under the Influence"] in violation of R.C. 4511.19(A)(1)(a). The jury in that trial was unable to reach a verdict. By Judgment Entry filed August 23, 2019 the trial court declared a mistrial. [Docket Entry No. 14].

{¶5} On September 20, 2019, the state moved to amend the charge to a "prohibited level" violation pursuant to R.C. 4511.19(A)(1)(d). [Docket Entry No. 17]. Sinclair filed a combined objection to the motion to amend and a motion to suppress on October 9, 2019. [Docket Entry No. 18]. By Judgment Entry filed October 10, 2019, the trial court granted the state's motion to amend. However, the entry amended the charge to "Ohio Revised Code.19(A)(1)(j)(viii)(II)." [Docket Entry No. 19]. The court scheduled

an evidentiary hearing on Sinclair's motion to suppress for October 15, 2019[1]. [Docket Entry No. 21].

{¶6} On October 17, 2019, the state filed a motion to modify the trial court's October 10, 2019 Judgment Entry to correct the Ohio Revised Code Section to 4511.19(A)(1)(d). [Docket Entry No. 23].

{¶7} By Judgment Entry filed October 17, 2019, the trial court ruled that Sinclair's motion to suppress did not state with particularity the issues regarding the Intoxilyzer 8000 and did not put the state on notice of the issues Sinclair intended to raise about the Intoxilyzer 8000. [Docket Entry No. 24][2]. The trial court permitted the suppression hearing to go forward on the issue of probable cause for the traffic stop. After hearing the testimony from Sergeant Cline and Sinclair, the trial court ruled that there was reasonable suspicion for the stop of Sinclair.

{¶8} The case proceeded to a jury trial. The jury found Sinclair guilty of OVI, in violation of R.C. 4511.19 (A)(1)(d), ["Prohibited Level"]. The jury found Sinclair not guilty of OVI, in violation of R.C. 4511.19 (A) (1) (a) ["Under the Influence"]. The trial court found Sinclair not guilty of the marked lanes violation.

*Assignments of Error*

{¶9} Sinclair, pro se, raises four Assignments of Error,

{¶10} "I. THE VERDICT RECEIVED FROM TRIAL CASE 2019TRC04296 ON DEFENDANT THOMAS A. SINCLAIR II WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

---

[1] Sinclair has filed a transcript of only four pages from the suppression hearing that contain only arguments of counsel.

[2] Sinclair does not challenge the trial court's ruling on his motion to suppress in this appeal.

{¶11} "II. THE TRIAL COURT DISPLAYED CIVIL CONTEMPT OF ITS OWN RULE WHEN THE PLAINTIFF OBJECTED TO A FILED SUPPLEMENTAL DISCOVERY ON OCTOBER 18, 2019, IN COMPLIANCE WITH CRIMINAL RULE 16(I) OF THE OHIO RULES OF CRIMINAL PROCEDURE.  THE OHIO HEALTH DEPARTMENT DID NOT APPEAR AFTER BEING SUBPOENA, OR WRITE A STATEMENT OF THEIR TESTIMONY CONDITIONAL ON CRIMINAL RULE 16(K). DEFENDANT, APPELLANT, THOMAS A. SINCLAIR II WAS NOT PERMITTED TO DISCUSS THE ABSENCE OF EXPERT WITNESS CRAIG YANNI ON OCTOBER 18, 2019 LEADING TO ABUSE OF DISCRETION UNDER OHIO CRIMINAL RULE 33(1); THE TRIAL COURT DID PROFFER THIS ERROR IN REFERENCE TO EVIDENCE RULE 103.

{¶12} "III. THE PLAINTIFF'S MOTION TO AMEND COMPLAINT FILED ON OCTOBER 17, 2019, DURING THE OPENING OF TRIAL.  THIS DOES NOT COMPLY WITH OHIO CRIM. R. 7(D).

{¶13} "IV. APPELLANT SINCLAIR RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10 ARTICLE 1 OF THE OHIO CONSTITUTION."

### Pro se Litigants

{¶14} We understand that Sinclair has filed this appeal pro se.  Nevertheless, "like members of the bar, pro se litigants are required to comply with rules of practice and procedure." *Hardy v. Belmont Correctional Inst.,* 10th Dist. Franklin No. 06AP-116, 2006-Ohio-3316, ¶ 9.  *See, also, State v. Hall,* 11th Dist. Trumbull No. 2007-T-0022, 2008-

Ohio-2128, ¶11.  We also understand that "an appellate court will ordinarily indulge a pro se litigant where there is some semblance of compliance with the appellate rules."  *State v. Richard,* 8th Dist. Cuyahoga No. 86154, 2005-Ohio-6494, ¶4 (internal quotation omitted).

{¶15}  In *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528(2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.  See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978)." It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief."  *Dissolution of Doty v. Doty,* 4th Dist. Pickaway No. 411, 1980 WL 350992 (Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227( 10th Dist. 1963).  New material and factual assertions contained in any brief in this court may not be considered.  See, *North v. Beightler,* 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶7, quoting *Dzina v. Celebrezze,* 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶16.  Therefore, we have disregarded facts and documents in the parties' briefs that are outside of the record.

{¶16} In the interests of justice, we shall attempt to consider Sinclair's assignments of error.

I.

{¶17}  After reviewing Sinclair's brief including his contentions, we have interpreted his First Assignment of Error in the following manner: Sinclair's conviction is not supported by sufficient evidence.

**1.1. Standard of Appellate Review– Sufficiency of the Evidence.**

{¶18} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, __U.S.__, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶19} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on

sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**1.1.1 Issue for Appeal**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Sinclair's guilt on each element of the crime for which he was convicted beyond a reasonable doubt.*

{¶20}   Sinclair was convicted of  Operating A Motor Vehicle Under the Influence of Alcohol and/or a Drug of Abuse a violation of R.C. 4511.19(A)(1)(h), which states, "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply…(h) The person has a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath."

{¶21}   In prosecutions for "under the influence" pursuant to R.C. 4511.19 (A)(1)(a), "the behavior of the defendant * * * is the crucial issue.  However, in *State v. Lucas*, the Supreme Court observed,

> The *per se* offenses define "the point the legislature has determined
> an individual cannot drive without posing a substantial danger, not only to
> himself, but to others."  *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15 OBR
> 1, 5, 472 N.E.2d 689, 693.  In determining whether one of these *per se*
> offenses was committed by the defendant, the trier of fact is not required to
> find that the defendant operated a vehicle while under the influence of

alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level. The critical issue at trial is the accuracy of the test, not the behavior of the accused. See Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34 Case W.Res.L.Rev. 239, 243.

40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). Sinclair tested 0.112.

{¶22} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Sinclair had committed the crime of OVI in violation of R.C. 4511.19(A)(1)(h). We hold, therefore, that the state met its burden of production regarding each element of the crime of OVI and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Sinclair's conviction.

{¶23} Sinclair argues in his assignment of error that his conviction is against the sufficiency of the evidence because the deputies did not observe him for 20-minutes prior to the administration of the breath test, the deputies had Sinclair blow into the machine for longer than was necessary in order to manipulate the test results and the results were inadmissible because a problem occurred when the deputy attempted to print Sinclair's test results. Sinclair did not raise these errors either in a motion to suppress or during his trial. Accordingly, to prevail Sinclair would have to demonstrate "plain error."

**1.2. Standard of Review – Plain Error.**

{¶24} As the United States Supreme Court observed in *Puckett v. United States*, 556 U.S. 129, 134,129 S.Ct. 1423, 1428, 173 L.Ed.2d 266(2009),

If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.

(Internal quotation marks and citations omitted).

{¶25} [A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010). (Internal quotation marks and citations omitted). The Ohio Supreme Court has defined the ability of a court to reverse a conviction because of structural error,

We have previously held that if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional[l] errors that may have occurred are subject to harmless-error analysis. *State v. Hill* (2001), 92 Ohio St.3d 191, 197, 749 N.E.2d 274, *quoting Rose v. Clark* (1986), 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460. Moreover, as we stated in *State v. Perry*, 101 Ohio St.3d 118, 2004–Ohio–297, 802 N.E.2d 643, [c]onsistent with the presumption that

errors are not structural, the United States Supreme Court ha[s] found an

error to be structural, and thus subject to automatic reversal, only in a very

limited class of cases. *Johnson v. United States*, 520 U.S. 461, 468, 117

S.Ct. 1544, 137 L.Ed.2d 718 (1997) (*citing Gideon v. Wainwright*, 372 U.S.

335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel));

Tumey *v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased

trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d

598 (1986) (racial discrimination in selection of grand jury); *McKaskle v.*

*Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-

representation at trial); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81

L.Ed.2d 31(1984) (denial of public trial); *Sullivan v. Louisiana*, 508 U.S.

275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt

instruction).

*State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 16. [Citations

and internal quotation marks omitted].

{¶26} The Ohio Supreme Court pertinently addressed when structural error

analysis should be used in *State v. Perry*, supra:

We emphasize that both this court and the United States Supreme

Court have cautioned against applying a structural-error analysis where, as

here, the case would be otherwise governed by Crim.R. 52(B) because the

defendant did not raise the error in the trial court. *See Hill*, 92 Ohio St.3d

at 199, 749 N.E.2d 274; *Johnson*, 520 U.S. at 466, 117 S.Ct. 1544, 137

L.Ed.2d 718. This caution is born of sound policy. For to hold that an error

is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court-where, in many cases, such errors can be easily corrected.

101 Ohio St.3d at 124, 2004-Ohio-297, 802 N.E.2d at 649, ¶ 23.

{¶27} Thus, the defendant bears the burden of demonstrating that a plain error affected his substantial rights and, in addition that the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

*1.2.1 Issues for Appellate Review: Whether the Deputies actions in observing Sinclair and encouraging him to blow into the machine past the ending point was clear error affecting Sinclair's substantial rights and seriously affecting the fairness, integrity, or public reputation of judicial proceedings.*

{¶28} In *State v. Steele*, 52 Ohio St.2d 187, 370 N.E.2d 740(1977), the Ohio Supreme Court explained the reason for the twenty-minute observational period before testing. The Court explained that the observational period is used to eliminate the

possibility that the test result is a product of anything other than the suspect's deep lung breath. Id. at 190, 370 N.E.2d 740. Further, since the "accuracy of the test results can be adversely affected if the suspect either ingests material internally, by belching or vomiting, the suspect must be observed" for twenty minutes to verify that no external or internal material causes a false reading. *State v. Douglas,* 1st Dist. Hamilton No. C-030897, 2004-Ohio-5726, ¶ 9, *citing Steele,* 52 Ohio St.2d at 190, 370 N.E.2d 740; *State v. Camden*, 7th Dist. Monroe No. 04 MO 12, 2005-Ohio-2718, ¶15. In *Steele,* the Court reasoned that once the trooper demonstrated it was highly improbable that the subject ingested any item during the twenty-minute period, it was up to the defendant to "overcome that inference" with proof that she had ingested some substance. Moreover, ingestion has to be more than just "hypothetically possible." *Steele,* supra at 192, 370 N.E.2d 740; *see, accord*, *State v. Faykosh,* 6th Dist. Lucas No. L-01-1244, 2002-Ohio-6241; *State v. Embry*, 12th Dist. Warren No. CA2003-11-110, 2004-Ohio-6324, ¶25; *State v. Rennick*, 7th Dist. Belmont No. 02 BA 19, 2003-Ohio-2560, ¶25; *State v. Siegel*, 138 Ohio App.3d 562, 568-569, 741 N.E.2d 938, 942-943(3rd Dist. 2000).

{¶29} Sinclair introduced nothing to suggest that he did, in fact, ingest some material during the twenty-minute period. A mere assertion that ingestion during the 20-minute period was hypothetically possible, without more, did not render the test results inadmissible. *State v. Raleigh*, 5th Dist. Licking No. 2007-CA-31, 2007-Ohio-5515, ¶ 51. Further, the video evidence admitted at trial established that Sinclair's hands were handcuffed behind his back before he was placed in the deputies' cruiser. Sinclair's handcuffs were removed after he entered the breath testing room. Sinclair was in the presence of Sergeant Cline and Deputy Paris at all times before and during the testing

procedures. Sinclair did not testify at trial that he did in fact ingest any item or have something in his mouth during any time during the 20-minute period before the BAC test was administered.

{¶30} Sinclair's argument concerning the length of time that he blew into the machine is pure speculation. Deputy Paris testified that he encourages a person to blow until he can no longer blow in order to ensure the person provides an adequate sample for analysis. Sinclair has presented no evidence or authority to support his assertion that the length of time a person blows into the machine can affect the test results.

*1.2.2 Issue for Appellate Review:* *Whether the printer malfunction with the Intoxilyzer 8000 in the printing of Sinclair's BAC test results was clear error affecting Sinclair's substantial rights and seriously affecting the fairness, integrity, or public reputation of judicial proceedings.*

{¶31} Sinclair next argues that the breath test was not conducted in substantial compliance with the Ohio Department of Health regulations because Sergeant Cline assisted Deputy Paris by using Deputy Paris's operator access card in order to resolve a printer malfunction. [Appellant's Brief at 17-18].

{¶32} At trial, Sergeant Cline testified that he is certified to administer BAC tests on the Intoxilyzer 8000 and has his own access card. He further testified that he did not administer the test to Sinclair; rather his sole interaction with the machine in this case was to correct a printer malfunction and print Sinclair's test results. Sergeant Cline testified that once a BAC test is completed the Intoxilyzer 8000 uploads the test results to an Ohio Department of Health website. This allows an officer to access the tests results and print out the test results at a later time. Both officers testified that the Intoxilyzer did not

malfunction during the testing procedure. Sinclair presented no evidence that the Intoxilyzer generated an error report indicating the test results were invalid or that his test results were compromised.

{¶33} In *State v. Osborne,* the Court addressed a similar issue,

> The second issue related to the printout of Mr. Osborne's test results. Officer Cook testified that the printer attached to the Intoxilyzer failed to print the test results immediately following Mr. Osborne's test. After Mr. Osborne posted bond and was released, another officer was able to retrieve a printout of the test results from the Intoxilyzer's internal printer, which showed a BAC of 0.201. Officer Cook also identified the printout at the suppression hearing. Although the printout is not part of the record for our review, the trial court stated in its judgment entry that the printout showed a BAC of 0.201 and contained no error reports.
>
> Accordingly, the trial court's finding of substantial compliance is supported by competent, credible evidence.

11th Dist. Lake Nos. 2018-L-124, 2018-L-125, 2018-L-126, 2019-Ohio-3225, ¶74. In the case at bar, Sinclair was permitted to cross-examine each deputy on the printer malfunction issues at trial.

{¶34} We decline to find plain error because we find no clear error affecting Sinclair's substantial rights and seriously affecting the fairness, integrity or public reputation of judicial proceedings.

{¶35} Sinclair's First Assignment of Error is overruled.

II.

{¶36} After reviewing Sinclair's brief including his contentions, we have interpreted his Second Assignment of Error in the following manner: The trial judge abused her discretion by not allowing Sinclair to present the Intoxilyzer 8000 certification records during Sinclair's direct examination. The Intoxilyzer 8000 records were prepared by Craig Yanni from the Ohio Department of Health pursuant to Ohio Admin. Code 3701-53-04(C). The state provided the records to Sinclair in its September 13, 2019 Supplemental Discovery. The state listed Yanni as a witnesses but did not call him during the jury trial.

**2.1. Standard of Appellate Review– Admissibility of Evidence.**

{¶37} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**2.1.1. Issue for Appellate Review:** *Did the trial judge abuse her discretion in refusing to permit the Intoxilyzer 8000 certification records to be admitted during Sinclair's testimony?*

{¶38}   R.C. 4511.19(D)(1)(b) provides, in relevant part, that evidence on the concentration of alcohol in an individual's breath may be admitted into evidence at trial if it has been "analyzed in accordance with methods approved by the director of health by an individual possessing a *valid permit* issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶39}   R.C. 3701.143 provides that for purposes of R.C. 4511.19, the Department of Health shall determine:

[T]echniques or methods for chemically analyzing a person's * * * breath* * * in order to ascertain the amount of alcohol * * * in the person's * * * breath * * *. The director shall approve satisfactory techniques or methods, *ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses.* Such permits shall be subject to termination or revocation at the discretion of the director.

(Emphasis added).   Chapter 3701–53 of the Ohio Administrative Code contains the department of health's methods, techniques, and qualifications that it implemented pursuant to R.C. 3701.143. Ohio Adm.Code 3701–53–02(A)(3) specifically provides that the Intoxilyzer 8000 is an approved breath testing instrument. Ohio Adm.Code 3701–53–09 explains how a person becomes qualified to operate that instrument. Under Ohio Adm.Code 3701–53–09(D), persons desiring to become operators of the Intoxilyzer 8000 shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health. The director of health shall issue operator access cards to perform tests to determine the amount of alcohol in a person's breath to individuals

who qualify under the applicable provisions of rule 3701–53–07 of the Administrative Code.

{¶40} Ohio Adm.Code 3701–53–07(E), which is titled "Qualifications of personnel," provides that,

> An individual meets the qualifications for an operator's permit by:
>
> (1) Being a high school graduate or having passed the "General Education Development Test"
>
> (2) Being a certified law enforcement officer sworn to enforce sections 4511.19 and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath alcohol concentration, or a certified corrections officer, and;
>
> (3) Having demonstrated that he or she can properly operate the evidential breath testing instrument by having successfully completed a basic operator or conversion training course for the type of approved evidential breath testing instrument for which he or she seeks a permit.

{¶41} Ohio Adm.Code 3701-53-04 provides that representatives of the director shall perform an instrument certification on the Intoxilyzer 8000.

{¶42} In the case at bar, Sinclair has failed to prove that he is qualified to administer a BAC test on the Intoxilyzer 8000 or to calibrate an Intoxilyzer 8000. Nothing prevented Sinclair from subpoenaing Craig Yanni or retaining his own expert to seek admission of the requested records at trial. Sinclair fails to articulate with any specificity exactly how admission of the proposed records would have led the jury to find him not guilty of the prohibited level in the case at bar.

{¶43} Because Sinclair is not competent to testify concerning the proper testing or calibration procedures for the Intoxilyzer 8000, the trial judge did not abuse her discretion in not allowing Sinclair to introduce the records during his testimony at trial.

{¶44} Sinclair's Second Assignment of Error is overruled.

III.

{¶45} After reviewing Sinclair's brief including his contentions, we have interpreted his Third Assignment of Error in the following manner: The trial court erred in granting the state's motion to amend the complaint.

{¶46} On September 20, 2019, the state moved to amend the charge to a "prohibited level" violation pursuant to R.C. 4511.19(A)(1)(d). [Docket Entry No. 17]. Sinclair filed a combined objection to the motion to amend and a motion to suppress on October 9, 2019. [Docket Entry No. 18]. By Judgment Entry filed October 10, 2019, the trial court granted the state's motion to amend. However, the entry contained a typographical error, amending the charge to "Ohio Revised Code.19 (A)(1)(j)(viii)(II)." [Docket Entry No. 19]. The court scheduled an evidentiary hearing on Sinclair's motion to suppress for October 15, 2019[3]. [Docket Entry No. 21]. On October 17, 2019, the state filed a motion to modify the trial court's October 10, 2019 Judgment Entry to correct the typographical error to Ohio Revised Code Section 4511.19(A)(1)(d). [Docket Entry No. 23].

{¶47} Sinclair has failed to file a transcript containing any discussion by the trial court and counsel of the motion to amend filed September 20, 2019 or the state's motion to modify the trial court's October 10, 2019 judgment entry, that took place on the record

---

[3] Sinclair has filed a transcript of only four pages from the suppression hearing that contain only the arguments of counsel.

prior to the start of his jury trial on October 17, 2019.  The appellant has the responsibility of providing the reviewing court with a record of the facts, testimony, and evidentiary matters that are necessary to support the appellant's assignments of error.  *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506(9th Dist. 1993); *Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 314, 549 N.E.2d 1237, 1238–1239 (9th Dist. 1989).  This principle is recognized in App.R. 9(B), which provides, in part, that ' * * *the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.* * *.  "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."  *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385(1980).  If a partial record does not conclusively support the trial court's decision, it is presumed that the omitted portion provides the necessary support.  *Wozniak*, 90 Ohio App.3d at 409, 629 N.E.2d at 506; *In re Adoption of Foster*, 22 Ohio App.3d 129, 131, 489 N.E.2d 1070, 1072–1073(3rd Dist. 1985), *overruled on other grounds In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 585 N.E.2d 418 (1992).  Also, in *State v. Hooks*, 92 Ohio St.3d 83, 2001–Ohio–150, 748 N.E.2d 528(2001), the Supreme Court noted: "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.  See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978).  It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief."  *Dissolution of Doty v. Doty*, 4th Dist. Pickaway No. 411, 1980 WL 350992 (Feb.

28, 1980), *citing Scioto Bank v. Columbus Union Stock Yards,* 120 Ohio App. 55, 59, 201 N.E.2d 227(10th Dist. 1963).

{¶48}  Without a complete record of the hearing in the trial court, we presume that the omitted hearing that occurred prior to the start of trial on October 17, 2019 supports the trial court's decision.  We further find that the trial court permitted the amendment to correct a typographical error.  We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him."  See *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 233 N.E.2d 137; *State v. Stanton* (1968), 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94; *Wachovia Mtg. Corp. v Aleshire*, Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16.  See, also, App.R. 12(D).  Sinclair has failed in his burden to demonstrate that he was prejudiced by the amendment.

{¶49}  Sinclair's Third Assignment of Error is overruled.

IV.

{¶50}  In his Fourth Assignment of Error, Sinclair argues that he received ineffective assistance of counsel.  Specifically, Sinclair contends that counsel failed to properly file a motion to suppress, call witnesses and to prepare for trial.  [Appellant's brief art 27].

**4. 1.  Standard of Appellate Review.**

{¶51}  To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To show deficiency, a defendant must

show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *See, also, Andrus, v. Texas,* __U.S.__, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335(June 15, 2020).

**4.1.2. Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to raise to file a proper motion to suppress, the result of the proceeding would have been different.*

{¶52} By Judgment Entry filed October 17, 2019, the trial court ruled that Sinclair's motion to suppress did not state with particularity the issues regarding the Intoxilyzer 8000 and did not put the state on notice of the issues Sinclair intended to raise about the Intoxilyzer 8000. [Docket Entry No. 24].

{¶53} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–0448; *Accord, State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶54} In the case at bar, Sinclair was permitted to cross-examine each deputy concerning the error that occurred during the printing of his BAC test results. In the case at bar, Sinclair presented no evidence or testimony that he had ingested material internally at any after he had been placed inside the deputy's cruiser. Sinclair did not testify that he had anything in his mouth during the BAC test.

{¶55} The record, including the video evidence of the BAC test, does not reveal any error in the Intoxilyzer 8000 itself, as opposed to a problem with the printer. That problem was corrected and the resulting test result printout does not show any error codes or malfunctions with the test. In the case at bar, the evidence showed that the Intoxilyzer 8000 was functioning properly at the time of Sinclair's test. Further, Sinclair has not challenged the trial court's ruling on the motion to suppress in this appeal.

**4.1.3. Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to call witnesses, the result of the proceeding would have been different.*

{¶56} Sinclair's argument that his counsel's failure to call expert witnesses, such as Craig Yanni, is speculative. "In order to obtain a reversal on ineffective assistance of counsel based on a failure to subpoena a witness, a defendant must demonstrate that the testimony of the witness would be of significant assistance to the defense." *State v. Reese*, 8 Ohio App.3d 202, 203, 456 N.E.2d 1253 (1st Dist. 1982). *Accord, State v. Varner*, 5th Dist. No. 98CA00016, 1998 WL 667620 (Sept. 14, 1998). We note the record is devoid of a proffer of the testimony Craig Yanni or any other purported witness.

{¶57} A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with

his client." *State v. Murphy*, 91 Ohio St.3d 516, 524, 2001–Ohio–0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff." *State v. Woullard,* 158 Ohio App.3d 31, 813 N.E.2d 964, 2004–Ohio–3395, ¶ 39(2nd Dist.)*, quoting State v. Yarber*, 102 Ohio App.3d 185, 188, 656 N.E.2d 1322(12th Dist. 1995). Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523(1988). When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller*, 7 Cal.3d 562, 573–574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP–340, 2004–Ohio–1008, ¶ 21. "As an initial matter, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Thompson* (1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407, 417." *State v. Nicholas,* 66 Ohio St.3d 431, 436, 613 N.E.2d 225(1993).

{¶58} Debatable trial tactics do not establish ineffective assistance of counsel.*"* *State v. Hoffner,* 102 Ohio St.3d 358, 365, 2004–Ohio–3430(2004), ¶ 45. Trial counsel's failure to request an expert is a "debatable trial tactic," and does not amount to ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 9, 514 N.E.2d 407 (1987)(trial counsel's failure to obtain a forensic pathologist to "rebut" issue of rape was not ineffective assistance of counsel); *State v. Foust*, 105 Ohio St.3d 137, 153–154,

2004–Ohio–7006, 823 N.E.2d 836, ¶¶ 97–99 (trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision"); *State v. Yarger*, 6th Dist. No. H–97–014, 1998 WL 230648 (May 1, 1998) (trial counsel's failure to hire an expert medical doctor to rebut state's expert witness was not ineffective assistance of trial counsel); *State v. Rutter*, 4th Dist. No. 02CA17, 2003–Ohio–373, ¶ 19, 28 (trial counsel's failure to hire an accident reconstructionist did not amount to ineffective assistance of counsel).

{¶59} Based upon the status of the record presently before this Court, we find Sinclair is unable to demonstrate the testimony would have been of significant assistance to his defense. Further, he has not established that there is a reasonable probability that the outcome of the trial would have been different if counsel would have subpoenaed and called witnesses on his behalf.

**4.1.4. Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to object the result of the proceeding would have been different.*

{¶60} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988) *Accord, State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A

defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶61}** Sinclair claims that his attorney failed to object to the prosecutor's reference to Sinclair's prior OVI conviction. The record indicates that Sinclair stipulated to his prior conviction. Accordingly, Sinclair was not prejudiced by the brief exchange during trial.

**{¶62}** Sinclair did not provide this Court a transcript of closing arguments or jury instructions in his case. Accordingly, we are unable to review those portions of Sinclair's arguments. [Appellant's brief at 24].

**{¶63}** Assuming arguendo that the advocacy of counsel was somehow deficient, such deficiency constitutes reversible error only where it prejudices the rights of the criminal defendant. No such showing has been made in this case. *State v. Nicholas,* 66 Ohio St.3d 431, 436, 613 N.E.2d 225(1993). There is nothing in the record to show the jury would have found Sinclair not guilty had counsel presented witnesses, asked different questions or objected as Sinclair urges. *State v. Benge*, 75 Ohio St.3d 136, 141, 661 N.E.2d 1019, 1996-Ohio-227.

**{¶64}** Sinclair's Fourth Assignment of Error is overruled.

{¶65} The judgment of the Canton Municipal Court is affirmed.


By Gwin, J.,

Hoffman, P.J., and

Delaney, J., concur

[Cite as *State v. Sinclair*, 2020-Ohio-4860.]