**CLEVELAND TRUST COMPANY, Plaintiff-Appellant, v. BEIDLER et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21880. Decided August 14, 1950.

William E. Todd, Sr., Cleveland, for plaintiff-appellant.
Ewing & Hecker, Charles P. Mayo, Cleveland, for defendant-appellees.

(FESS, J, of Sixth District; DOYLE, J, and HUNSICKER, J, of Ninth District sitting by designation.)

## OPINION

By FESS, J.:

This is an appeal on questions of law by plaintiff, from a judgment entered by the common pleas court on behalf of defendants.

On May 26, 1931, The Beidler-Curry Coal Company, a corporation, acting through its president and treasurer, made, executed and delivered to the plaintiff, its promissory note in the amount of $2,800.00, payable ninety days after date. Said note bore the endorsement of E. W. Beidler, B. C. Tucker, H. T. Beidler and T. F. Beidler, each of whom were either officers or directors of The Beidler-Curry Coal Company, and each of whom, concurrent with said endorsement, guaranteed payment of said note, waived demand and notice of nonpayment, and authorized any attorney at law to appear in any court of record in any State after said note became due and waive the issuance and service of summons and confess judgment against them in favor of the holder of said note for such amount as might then appear due.

In March of 1931, the assets of The Beidler-Curry Coal Company were sold as an entirety. After applying the proceeds of sale to outstanding obligations, the Company was still indebted to various creditors in an amount of approximately Sixteen Thousand Dollars, which amount included the note held by plaintiff. The four endorsers upon said note, being desirous of accomplishing the liquidation of said indebtedness and conscious that each of the several individuals, because of particular circumstances and past contact with the various creditors, could more successfully initiate and successfully conduct negotiations with particular creditors leading to the accomplishment of such result, in August, 1931, entered into a detailed agreement as to the individual responsibility of said four endorsers, among themselves, in bringing about the payment of said indebtedness.

In this agreement H. T. Beidler, E. W. Beidler and B. C. Tucker each agreed to pay $5,334.00 to the creditors of the coal company, and Theodore F. Beidler agreed to pay to each of the other three parties $1,333.51. With respect to the Cleveland Trust Company note, H. T. Beidler agreed to pay $921.00, E. W. Beidler $1,351.87, and B. C. Tucker $527.16. The agreement recites that the payments by each constitute one-fourth of the total obligations of the parties thereto, and were to be made in installments from time to time as each party is able to do so, and to protect the other three parties to the agreement.

The agreement further provided that a record of payments made by each party should be kept and the totals paid in should be equalized on a pro-rata basis from time to time, "it being the intention of this agreement that each party shall relieve the other parties to this agreement from the responsibility of payments, the obligations set against each party's name and that no party shall be obliged to pay more than his pro-rata share." It was further provided that in the event one party should pay more than his share at or before final settlement, the other parties in default would pay such party any money paid in excess of such party's proportionate share.

On September 28, 1931, a note in the amount of $13,800.00, representing an indebtedness owed by H. T. Beidler for some time prior to said date, to the collateral loan department of plaintiff, matured. On October. 20, 1931, this latter note was renewed, the principal of same, however, being increased to $16,233.40. This latter note was secured by one hundred and ninety-three shares of National Screw & Manufacturing Company stock, several insurance policies upon the life of H. T. Beidler, and possibly other collateral. On October 20, 1931, the same day that the renewed note in an increased amount was delivered by H. T. Beidler, to the collateral department of plaintiff, such department transferred to its commercial department $2,826.00, and on the same day the record of the loan of plaintiff to The Beidler-Curry Coal Company was credited with $2,800.00 and such record was closed. On the same day, the plaintiff endorsed without recourse the $2,800.00 note to H. T. Beidler, who thereupon endorsed said note to plaintiff, and said note was deposited with the collateral loan department of plaintiff and pledged as additional collateral security for the indebtedness of H. T. Beidler, in the sum of $16,233.40.

H. T. Beidler's collateral note in the sum of $2,805.07, dated July 31, 1935, and also his collateral note in the sum of

$16,700.00 dated August 31, 1935, shows as collateral the one hundred and ninety-three shares of National Screw & Manufacturing Company, two insurance policies, and the $2,800.00 note of the coal company. These two collateral notes of H. T. Beidler were reduced to judgment and show a balance due on the note of $2,805:07, as of December 22, 1937, in the sum of $1,555.50, and on the $16,700.00 note, as of June 7, 1939, in the sum of $6,486.06.

On April 24, 1946, plaintiff recovered a cognovit judgment based upon said $2,800.00 note against the defendants, T. F. Beidler, B. C. Tucker and E. W. Beidler, said judgment being in the amount of $5,264.00. Judgment was not taken against the coal company or H. T. Beidler. After term, the defendants, B. C. Tucker and E. W. Beidler, filed their separate petitions to vacate said judgment, and on June 28, 1947, by separate entries, the judgment against the defendant, B. C. Tucker, and defendant, E. W. Beidler, was vacated; said vacations being conditioned, however, that said judgments vacating said judgment be suspended pending trial upon the issues joined. And thereafter, by leave of court, said two defendants filed their separate answers and, later, amended answers. The defendant, T. F. Beidler, deceased since the submission of this cause, did not during his lifetime question the judgment.

The amended answers of the defendants, B. C. Tucker and E. W. Beidler, present six separate defenses:

1. General denial.

2. That plaintiff holds the note as pledgee only and is not the real party in interest.

3. That the note was wholly without consideration and for accommodation purposes only; that plaintiff became possessed of the instrument as pledgee after the maturity thereof; that plaintiff is not an innocent holder for value or a holder in due course, and that defendant is not indebted to plaintiff in the sum of $2,800.00 by virtue of such accommodation endorsements or otherwise.

4. That the note has been paid.

5. Sets forth the agreement between E. W. Beidler, H. T. Beidler, B. C. Tucker and T. F. Beidler, with reference to payment of the obligations of the coal company, including the note in suite; that H. T. Beidler after maturity of the note paid and became possessed of it and thereafter, on October 20, 1931, redelivered the note to plaintiff as additional security for his personal obligation.

In its reply the plaintiff alleges that the allegations in the second, third and fifth defenses are insufficient in law, and further alleges:

1. That plaintiff is the legal owner and holder of the note and entitled to maintain the action.

2. That plaintiff acquired the note in due course before maturity and is an innocent holder thereof, and has paid full value therefor, and is entitled to recover upon the written guaranty of the defendants thereon.

3. Denies that the note has been paid.

4. Denies the agreement of August, 1931, or that plaintiff ever had any knowledge of said agreement; denies that plaintiff released any of the endorsers on said note, and denies that H. T. Beidler paid or has become possessed of said instrument.

Upon the pleadings and the evidence, the common pleas court found that the note in suit had been paid and rendered judgment for the defendants.

A review of the evidence discloses that on October 20, 1931, H. T. Beidler obtained an additional loan from the bank in the sum of $3,433.40; that $2,826.00 of the additional loan was applied by the bank in payment of the coal company note of $2,800.00. Instead of stamping the note "paid" it was endorsed without recourse by the bank to H. T. Beidler, who in turn endorsed it in blank and redelivered it to the bank as additional collateral upon his personal note of $16,233.40. Upon its redelivery to the bank, the $2,800.00 note was held by the bank as pledgee. Since the note was overdue, neither H. T. Beidler nor the bank became holders in due course.

The first question to be determined is whether the bank as pledgee of the note may bring an action thereon without converting it to its own, pursuant to the terms of the collateral note. No authority to bring an action on the pledged note is provided by the collateral note. After default a pledgee may sell the property in accordance with the terms of the pledge, or bring an action to foreclose his lien. However, if the pledge consists of a chose in action, apparently the pledgee may bring an action in his own name for collection thereof, and is bound to account to the pledgor for the proceeds of the collection and properly credit the same on the pledgor's obligation so secured. **Handly v. Sibley, 46 Oh St 9.** The pledgee of a promissory note may collect it by suit when it becomes due, whether the pledgor's obligation is then matured or not. 41 Amer. Juris. 632, citing **Central National Bank v. Mills, 62 Oh Ap 413;** Hammond Ice Co. v. Heitman, 221 Ind. 352, 47 N. E. 2d 309, 145 A. L. R. 997, 1004.

The second question is whether the bank, as a holder other than a holder in due course, may bring the action.

Prior to the enactment of the Uniform Negotiable Instruments Act in 1902, R. S. 3173 provided that if an instrument

be indorsed after due date, and the indorsee institute an action thereon against the maker, drawer or acceptor, the defendant shall be allowed to set up any defense he might have made, had the action been instituted in the name and for the use of the person to whom the instrument was originally made payable. This section seems to recognize that a party taking a note after maturity could bring an action thereon, but subject to defenses. However, in **Osborn v. McClelland, 43 Oh St 284 (1885)**, the Supreme Court held that a holder of a promissory note in due course could maintain an action thereon in his own name, but that a person who became a holder after maturity who sues to recover thereon, is subject to the defense by the maker of the note that the holder is not the real party in interest. See also **Kernohan v. Durham, 48 Oh St 1 (1891)**

**Sec. 8156 GC** provides:

"The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument."

**Sec. 8295 GC** defines the term "holder" as the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.

The N. I. L. makes a distinction between a "holder" and a "holder in due course." The latter holds the instrument free from defenses available to prior parties, but in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. **Secs. 8162 and 8163 GC.**

Under §8156 GC the plaintiff can properly bring the action as holder of the note. **Wick v. Cleveland Securities Co., 71 Oh Ap 393, 50 N. E. 2d 351, 26 O. O. 324.** But since plaintiff took the note after it was past due, as pledgee, the note is subject to the same defenses as if it were nonnegotiable. The Supreme Court of Ohio has recently held that the holder of a promissory note who takes it after maturity takes it subject to every objection, including equitable set-off, to which it was subject in the hands of his assignor. **Union Properties, Inc., v. Baldwin Bros. Co., 141 Oh St 303,** 47 N. E. 2d 983, 25 O. O. 428, 149 A. L. R. 725.[1]

---

1. Courts in other jurisdictions have held that the term "defenses" means technical defenses, and does not embrace set-offs arising out of an independent transaction. Y. Stegal v. Union Bank & Trust Co. (Va. 1934), 176 S. E. 438, 95 A. L. R. 582.

It is interesting to note that the Union Properties case approved and followed **Baker v. Kinsley, 41 Oh St 403,** which was decided prior to the enactment of the N. I. L.

Since the plaintiff brought its action as pledgee (or assignee) and also as endorsee after maturity, it is subject to the defense that it is not the real party in interest. **Osborn v. McClelland, 43 Oh St 284; Kernohan v. Durham, 48 Oh St 1.**

At the time H. T. Beidler transferred, or assigned the note to the bank, he had paid the maker's obligation on the note, and having paid the principal obligation was entitled to contribution from his coguarantors. But prior to his payment H. T. Beidler had agreed with his coguarantors with respect to their mutual obligations on the indebtedness of the coal company, and could then recover from them only their proportionate share of the obligation to the bank. H. T. Beidler had paid the note. Since the maker of the note was nonexistent, all Beidler assigned to the bank as collateral was his right of contribution from his coguarantors.

The past-due note was held by the bank as pledgee from October 20, 1931, until judgment was taken thereon on April 24, 1946, against E. W. Beidler and Tucker. In the meantime E. W. Beidler and Tucker had paid an amount equal if not in excess of their two-thirds share of the coal company's indebtedness, so that H. T. Beidler could then claim no contribution from them on account of their payment of the $2,800.00 note in 1931.

In Marling v. Fitzgerald (1909), 138 Wis. 93, 120 N. W. 388, 23 L. R. A. N. S. 177, the Supreme Court of Wisconsin held:

"Though assignment of a note for value and without notice is without due course, the defenses to which it is subject are only those existing at the time of the transfer, and not those which possibly may at some future time exist."

But in Rosecky v. Tomaszewski, (1937); 225 Wis. 438, 274 N. W. 259, the court limited the above rule to equitable defenses only, and not to subsequent payments on the note which were legal defenses.

Where an assignee becomes the outright holder of a chose in action he takes it subject to any infirmities existing at the time of the assignment, but he should be free from any transactions between his assignor and the obligor subject to the assignment. But in the instant case the bank as pledgee-assignee did not become the owner of the chose in action, and until such time as the bank should convert the note to its own, the note was held subject to any transactions which might subsequently arise between H. T. Beidler, as pledgor,

and the other guarantors of the note. At the time it took judgment on the note it stood in the shoes of H. T. Beidler and could have no greater right against the defendants than its pledgor-assignor. Since E. W. Beidler and Tucker were no longer obligated to H. T. Beidler, they were also not obligated to the plaintiff.

In passing it may be noted that when H. T. Beidler reindorsed the note to the bank after maturity, he thereby made the note payable on demand, giving it a second maturity, so far as he was concerned, 31 Harvard Law Review, p. 1139; but his reindorsement could not revive the maturity of the note, so far as his coguarantors were concerned.

The judgment of the common pleas court is affirmed. Exc. O. S. J.

HUNSICKER, PJ, and DOYLE, J, concur.