THE SCIOTO BANK, APPELLANT, *v.* COLUMBUS UNION STOCK
YARDS ET AL., APPELLEES. (Two cases)*

(Nos. 6764 and 6765—Decided March 26, 1963.)

*Mr. Ray W. Davis* and *Mr. James M. Hengst*, for appellant.
*Mr. Tom A. Renick* and *Mr. James C. Britt*, for appellees.

DUFFEY, J. This is an appeal from judgments of the Court of Common Pleas of Franklin County in two cases. The cases have been consolidated for hearing and determination in this court. In both, judgment was for the defendants-appellees after both sides had rested on the merits.

Plaintiff-appellant, The Scioto Bank, is a commercial bank located in Commercial Point, Pickaway County. The defendant Arthur P. Berger held an account for many years doing a large volume of checking and depositing. Upon the deposit of a check, it was the practice of the bank to credit Berger's account and allow him to draw prior to collection of the item. On March 6, 1956, the state banking department made the following recommendation:

"* * *

"Management should scrutinize the account of Arthur Berger carefully, since this customer has been operating for some time on uncollected funds. If stop payment orders should be given on any of the checks he submits for deposit, subject might find itself in an embarrassing position. It does not appear that customer is kiting checks and in looking over his account no

---

*Motions to certify the records (38340 and 38341) overruled, December 19, 1963.

record was found of any overdrafts. However, bank is extending credit to this customer until checks have cleared and on the average day these may run into thousands of dollars. It is recommended that this customer be asked to maintain a balance that will cover these uncollected funds.

"* * *."

In September 1956, a separate "collection" account was opened and a deposit of $17,000 made. Prior to August 14, 1957, Berger had drawn very heavily upon his active checking account and these checks had been honored by the bank. On August 14, 1957, Berger held two checks drawn by the defendant-appellee Columbus Union Stock Yards payable to Berger or order and in the amounts of $8,841.21 and $8,324.01. Berger endorsed them in blank (see former Sections 1301.35 and 1301.36, Revised Code) and deposited them in his active account. The deposit slip stated in print:

"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not. Also any item drawn on this bank not good at close of business on day deposited."

However, as in previous instances, the bank credited Berger's account before collection.

Payment on these two checks was stopped. The drawee bank notified Scioto, and returned the checks dishonored on August 20, 1957. On that date the bank transferred the balance shown in the active account (then $16,117.73) to the collection account which, when added to the $17,000, made a balance of $33,117.73 in that account. It charged the two dishonored checks to that account. Thus, the collection account record on August 20 shows a remaining balance of $15,952.51. Subse-

quently, further deposit items were dishonored, and by August 29 the final accounting showed Berger's accounts to be a minus $51,389.41.

The Scioto Bank sued Berger as endorser and Columbus Union Stock Yards as drawer on the checks. Berger did not appear, put in no defense, and apparently is insolvent. The drawer-appellee filed a general denial, and the case was submitted on the merits. The appellee rested without offering any defensive evidence. Thus, there is no claim or proof of any infirmity in the instruments sued upon nor any defense of lack of consideration. Cf. former Section 1301.26, Revised Code, effective October 1, 1953.

The appellee's first contention is that Scioto is not a holder in due course because it did not give value. It is argued that Berger's indebtedness arose after August 20 because the amount of the dishonored deposit items did not exceed the balance shown in both accounts until after that date, and the bank had notice of dishonor on the Union Stock Yards' checks before August 20.

It should be noted that no checks drawn by Berger on his accounts were honored and paid by the bank after August 15. The indebtedness arose from the dishonor of deposit items. In effect, appellee is arguing that value is not given until the books reflect what is in fact true, i. e., the bank has honored and paid checks which exceed collectible items on deposit. However, we need not decide that point. These checks were endorsed in blank, deposited with the bank, and the bank has possession. Therefore, the bank is a holder within the Negotiable Instruments Law. Whether it is also a holder in due course is immaterial unless a defense was made.

No defense was made which goes to the instruments themselves or to the consideration. However, appellee contends that the bank suffered no loss. Counsel points to the fact that the checks were charged back against the collection account. From this is derived the proposition that Berger thereby paid the checks. It is not clear what legal conclusion appellee derives from this proposition. Apparently the contention is that although appellee on the record is clearly liable on the instruments since it offered no defense to them, yet Berger has the

beneficial right to the checks even though the bank holds possession and title, and on this basis appellee apparently maintains that the bank cannot bring the action.

Perhaps this contention is an attempt to claim that after the chargeback, the bank was no longer the real party in interest. Whether that is a defense is dubious. Compare *Cleveland Trust Co.* v. *Beidler* (1950), 88 Ohio App., 285, with *Wick* v. *Cleveland Securities Corp.* (1943), 71 Ohio App., 393, and *Kirk* v. *Schumeth* (1952), 92 Ohio App., 442.

In any event, it is fundamental in negotiable instruments that payment by a person secondarily liable does not extinguish the instrument nor affect the obligations of the person primarily liable. Even if it be assumed that the chargeback constituted a payment, and that this defense is available, the fact is clear that by August 29 (if not earlier) Berger was indebted to the bank in the sum of $51,389.41. See testimony of the cashier in the record. It is also clear that on that date and since the bank has held possession of these two checks on a blank endorsement by the payee, Berger. The bank has a ''banker's lien'' on any such asset of its depositor which it holds when an indebtedness arises. See *Bank* v. *Brewing Company* (1893), 50 Ohio St., 151, and cases collected in the annotation, ''Lien of bank upon commercial paper delivered to it by debtor for collection,'' 22 A. L. R. (2d), 478. Whether Berger could have demanded return of these particular checks after the chargeback and before the ''float'' came back to wipe out the paper balance is, in our opinion, immaterial under these facts. Assuming, without deciding, that the lien did not attach until the books reflected the indebtedness, no demand for their return was made by Berger. We think it clear that on August 29 the indebtedness did exist, the instruments were in the bank's possession, and the lien attached.

In the briefs it is stated that pursuant to the Ohio banking statutes the directors of the bank restored the capital impairment resulting from Berger's activities. It is not the purpose of the banking law nor the personal intent of the directors in repairing an impairment to work any benefit for the debtor by paying his debt. However, whether or not the restoration of the impairment does or should affect the bank's right to sue, we need not decide. The point has not been argued, and the state-

ment only appears in the briefs. Facts stated in the briefs are not a part of the record, and in an appeal on questions of law only, the court is confined to the record.

The judgments of the Common Pleas Court are reversed. In view of the fact that the case was submitted after trial on the merits, an entry granting final judgment for appellant may be submitted to this court.

*Judgments reversed.*

BRYANT, J., concurs.

DUFFY, P. J., dissenting. I dissent because the facts do not indicate that the defendants owed the plaintiff any amount at the time of trial. In the absence of a showing of indebtedness to plaintiff, there should be no lien, and their interest as a holder was satisfied when it was charged back to Berger's account. Based on the pleadings, the motion to dismiss was properly sustained.