[Cite as *State v. Emch*, 2023-Ohio-3553.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023AP050031 |
| DANIEL R. EMCH | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Tuscarawas
County Court of Common Pleas, Case No.
2022 CR 01 0021

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 28, 2023

APPEARANCES:

For Plaintiff-Appellee                               For Defendant-Appellant

KRISTINE W. BEARD                                 DANIEL EMCH PRO SE
Assistant Prosecutor                               Inmmate #907-750
125 E. High Avenue                                 Noble Correctional Institution
New Philadelphia, OH 44663                    Caldwell, OH 43724

*Gwin, P.J.*

{¶1} Defendant-appellant Daniel R. Emch ["Emch"] appeals from the Tuscarawas County Court of Common Pleas, April 18, 2023 Judgment Entry denying his motion to withdraw his no contest plea.

*Facts and Procedural History*

{¶2} Emch was indicted on February 1, 2022 by the Tuscarawas County Grand Jury for one count of Felonious Assault a violation of R.C. 2903.11(A)(2)/(D)(1)(a) a second-degree felony, one count of Abduction in violation of R.C. 2905.02(A)(2)/(C) a third-degree felony, and one count of Robbery in violation of R.C. 2911.02(A)(3)/(B) a third-degree felony.

{¶3} On May 26, 2022, the trial court filed a Memorandum of Pretrial in which the court scheduled a Change of Plea or Final pretrial for September 19, 2022. [Docket Entry No. 31].

{¶4} On September 19, 2022, Emch appeared for a plea hearing represented by counsel. During the hearing the state amended the count of Felonious Assault to one count of Aggravated Assault a fourth-degree felony. The state represented that in exchange for a plea to the amended indictment the state would recommend a thirty-six-month prison sentence to be reserved in favor of community control. Plea T., Sept., 2022 at 2. During the hearing, the trial judge informed Emch of the plea agreement and inquired if Emch believed he was promised anything more than the state had represented. Id. at 6. Emch responded he did not believe any other promises were made in exchange for his plea. Id. The trial judge further asked Emch if he understood that the judge "did not promise a specific sentence in exchange for your plea[.]" Id. at 7. Emch told the trial judge

he understood. Id. He further assured the trial judge that he was satisfied with his attorney and that he was not coerced or forced in any way to enter a no contest plea.  Id. at 6.

{¶5}  The record demonstrates the trial court very carefully adhered to Criminal Rule 11, and strictly complied with all of the requirements of Criminal Rule 11.  The trial court conducted a complete and thorough colloquy.  Emch acknowledged he understood his rights, the charges, the plea agreement, the maximum penalties, and the specific constitutional rights he was waving with the plea. Thereafter, Emch entered a plea of no contest to the amended indictment and executed an Acknowledgement of No Contest Plea in accordance with Criminal Rule 11(C) and (F).  [Docket Entry No. 52].  The trial judge accepted Emch's no contest pleas, ordered the preparation of a presentence investigation report and deferred sentenced.

{¶6}  On November 10, 2022, the state expressed its reservations concerning the recommendation it agreed to make concerning sentencing. Specifically, the prosecutor told the trial judge,

> Your honor, as you know this was a case that was resolved by a negotiated plea based on the evidence in the case and to an aggravated assault F-4, an abduction F-3, and a robbery F-3.  The State recommended that the Defendant serve thirty-six months in prison and that the Court reserve that in favor of community control sanctions.  When the Court looks at the sentencing factors, we would say that this is more serious because of the nature of the offense, not just the offense itself, but that it went over a prolonged period, that it involved numerous people, and that there were opportunities to diffuse the situation which gave rise to this.  We would also

say that, given the record, recidivism is more likely. There's a twenty-seven score on the ORAS which as the Court knows is the test used to determine whether somebody is likely to reoffend. And we would say that more weight should be given to recidivism or the fact that this Defendant is more likely to commit the offense again. Perhaps, the recommendation was made because of what appears to be the wrong acts of all the characters involved in this case, but the only thing that really disturbed me in the PSI was there was an indication of, of kind of not accepting responsibility and, and playing the victim in this case. When you resort to self-help your honor, and then bad things happen, you can't claim self-defense and you can't claim you're not at fault. The other thing that bothered me is that the wounds to the other individual involved in what appeared to be a knife, knife fight were minimized by this Defendant in his typewritten statement. If he would have reviewed his own discovery, he would find out that they were not superficial stab wounds to the victim in this case. *That being said, we made the recommendation we did and we will stand by our recommendation.*

Sent. T., Nov. 10, 2022 at 2-3. (Emphasis added).

{¶7} The trial judge addressed Emch prior to sentencing. The judge stated in pertinent part as follows:

In doing that evaluation of a sentence, I'm required to look at whether or not the matter is more or less serious than what normally constitutes the offense. And I think that there's no doubt that it is, it's more serious in some aspects, the abduction maybe isn't more serious than what normally

constitutes the offense, but certainly the assaultive behaviors. Your attorney has referred to it as a free-for-all. I think in pretrial we used the word melee, but certainly a lot of people involved. I read every report that was provided in the PSI and every witness statement and no big surprise everybody's perspective is a little bit different. One of the victims here was stabbed. The offense was facilitated by your relationship with the one victim, the victim of the robbery was someone you knew and the victim of the stabbing was the acquaintance of that person. The offense was committed while you were armed with a knife and I think that the phrase the State used, the self help, and, and you said it yourself, you should have gone to small claims. I mean, this is over less than five hundred dollars. I think, I, for some reason I was thinking it was two hundred fifty, I can't place my, place, place that in the facts right now, but I know it was a minimal amount. But certainly, showing up to collect armed with a knife is not what we expect people to do. The other thing I'm required to look at is the likelihood of reoffending, which we phrase as recidivism. In this case, you do have prior adjudications as a juvenile and a prior history of criminal convictions… But prior, prior to, prior to this, you do have the failure to comply with the order or signal of a police officer and then some other felony drug charges, possession, a felony three, felony four, other misdemeanors. But the most troubling thing is the list of prior convictions for felony crimes of violence and that's, I just want to make sure, yeah, so that list is probably the longest list of felony crimes of violence I've seen. Murder in the second

degree in California, battery on police, peace officer, assault with a deadly weapon, three counts of aggravated robbery, a felonious assault, and escape. In the terms of history, there were three prior prison terms and previous revocations on parole under two institution numbers. A demonstrated pattern of substance abuse from the age of seventeen with marijuana and alcohol. Testing positive for marijuana at the PSI interview. The risk assessment score is high at a twenty-seven and I have a note here that you have engaged in telehealth services for bipolar disorder, antisocial personality disorder, post-traumatic stress disorder, and that you were compliant on post-release control. Overall, the, the balance is that the recidivism is more likely. *I cannot go along with the State's recommendation for community sanctions.* You have a long history and I know you say twenty years, and there have been some things more recently, criminal damaging, criminal trespass, I realize they're misdemeanors but you still don't take a knife and show up at somebody's house to collect money. And get into this, this free-for-all and stab somebody. That's just not a reasonable response to this. And I don't protect the public by saying that's okay, go ahead and just live your life out there in this community.

Sent. T., Nov. 10, 2022 at 5-7.

{¶8} The trial judge sentenced Emch to serve an aggregate 24-month prison sentence. Emch filed an appeal from his conviction and sentence which was subsequently dismissed voluntarily[1].

---

[1] 5th Dist. Tuscarawas No. 2022 AP 12 0053.

{¶9} On December 5, 2022, Emch filed a pro se motion to Withdraw from or Void Plea Agreement/ Reinstate Original Plea. [Docket Entry No. 65]. On January 20, 2023, Emch filed a Motion to Set Aside the Judgment of Conviction and Permit Defendant to Withdraw his Guilty Plea. [Docket Entry No. 75]. On March 17, 2023, the state filed a response in opposition to Emch's motions. [Docket Entry No. 83]. By Judgment Entry filed April 18, 2023, the trial judge denied Emch's motions.

*Assignments of Error*

{¶10} Emch has set forth three Assignments of Error,

{¶11} "I. A MANIFEST INJUSTICE OCCURRED WHEN THE STATE BREACHED DEFENDANT'S PLEA AGREEMENT. PLEA AGREEMENTS ARE CONTRACTUAL AND MUST BE HONORED.

{¶12} "II. A DEFENSE ATTORNEY'S FAILURE TO OBJECT TO A VIOLATION OF HIS CLIENT'S PLEA AGREEMENT CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶13} "III. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO NOT HOLD THE STATE TO SPECIFIC PERFORMANCE AND SUBSEQUENTLY OVERRULE DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WHEN THE STATE'S FAILURE TO HONOR THAT AGREEMENT IS A MATTER OF RECORD."

**Pro se Appellant**

{¶14} We understand that Emch has filed this appeal pro se. Nevertheless, "like members of the bar, pro se litigants are required to comply with rules of practice and procedure." *Hardy v. Belmont Correctional Inst.*, 10th Dist. No. 06AP–116, 2006–Ohio–3316, ¶ 9. *See, also, State v. Hall*, 11th Dist. No. 2007–T–0022, 2008–Ohio–2128, ¶ 11.

We also understand that "an appellate court will ordinarily indulge a pro se litigant where there is some semblance of compliance with the appellate rules." *State v. Richard*, 8th Dist. No. 86154, 2005–Ohio–6494, ¶ 4 (internal quotation omitted). We realize that an incarcerated litigant is subject to restrictions and has limited access to research materials, making it more difficult to timely comply with certain appellate rules. *See, Karmasu v. Tate,* 4th Dist. Scioto No 94 CA 2217, 1994 WL 521235. Although in a pro se action the court allows latitude to the unrepresented defendant in the presentation of his case, the court is not required to totally throw the Rules out the window. *See, Wellington v. Mahoning Cty. Bd. of Elections,* 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 554, ¶18. (A substantial disregard for the rules cannot be tolerated).

{¶15} One area where this Court does not have discretion to overlook, is where facts, argument or evidence has been presented in the appellate brief that were not presented to the trial court during the proceedings in the lower court. In *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528(2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. *See, State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978)." It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty*, 4th Dist. No. 411, 1980 WL 350992 (Feb. 28, 1980), *citing Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227(1963). New material and factual assertions contained in any brief in this court may not be considered. *See, North v. Beightler*, 112 Ohio St.3d 122, 2006–Ohio–6515, 858 N.E.2d 386, ¶ 7, *quoting Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006–Ohio–1195, 843 N.E.2d 1202, ¶

16. Therefore, we have disregarded facts and documents in the parties brief that are outside of the record.

{¶16} Before addressing Emch's assignments of error, we must note the following procedural issue. In his appellate brief, Emch has failed to separately argue his first, second and third assignments of error as required by App.R. 16(A)(7). Instead, Emch has presented just one argument in support of all three assignments of error. Under App.R. 12(A)(2), we may choose to disregard any assignment of error that an appellant fails to separately argue. Therefore, we could exercise our discretionary authority to summarily overrule Emch's assignments of error. *See Comisford v. Erie Ins. Property Cas. Co.,* 4th Dist. Gallia No. 10 CA 3, 2011-Ohio-1373, ¶29; *Newman v. Enriquez*, 171 Ohio App.3d 117, 869 N.E.2d 735, 2007–Ohio–1934, (4th Dist.), ¶ 18; *Hyde v. Sherwin-Williams Co.,* 8th Dist. Cuyahoga No. 95687, 2011-Ohio-4234, ¶12; *Pahounds v. Beamer,* 5th Dist. Coshocton No. 09 CA 017, 2009-Ohio-6881, ¶65.

{¶17} Nevertheless, in the interest of justice, we will address Emch's assignments of error. Further, we will consider some of them together, as they all relate to the trial court's denial of his motion to withdraw his no contest plea on the basis that the state breached the plea bargain agreement with Emch.

I & III

{¶18} After reviewing Emch's brief including his contentions, we have interpreted Emch's first and third assignments of error in the following manner: The state breached the plea agreement entered into with Emch resulting in a manifest miscarriage of justice. Therefore, the trial court erred in not granting Emch's post-sentence motion to withdraw his no contest plea.

**Standard of Appellate Review**

{¶19} Crim. R. 32.1 governs the withdrawal of a guilty or no contest plea and states: "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." In the case at bar, because Emch's request was made after the sentence was imposed, the standard by which the motion was to be considered was "to correct manifest injustice."

{¶20} The accused has the burden of showing a manifest injustice warranting the withdrawal of a guilty plea. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324(1977), paragraph one of the syllabus. A manifest injustice has been defined as a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 1998-Ohio-271, 699 N.E.2d 83(1998). "'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Ruby,* 9th Dist. No. 23219, 2007-Ohio-244, ¶ 11, quoting *State v. Williams,* 10th Dist. No. 03AP-1214, 2004-Ohio-6123, ¶ 5. Accordingly, under the manifest injustice standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *Smith,* 49 Ohio St.2d at 264.

**Issue for appellate review:** *Whether Emch has demonstrated a fundamental flaw in the proceedings which results in a miscarriage of justice or is inconsistent with the demands of due process.*

{¶21} Emch argues that the state breached the plea bargain it entered into with him in exchange for his no contest plea.

**{¶22}** It is the duty of the trial court as a trier of fact to determine whether there has been compliance with a plea agreement. *State v. Curry*, 49 Ohio App.2d 180, 183, 359 N.E.2d 1379 (9th Dist. 1976). In order to determine whether a plea agreement has been breached, courts must examine what the parties reasonably understood at the time the defendant entered his guilty plea. *See United States v. Partida–Parra*, 859 F.2d 629 (9th Cir. 1988).

**{¶23}** A plea agreement is generally "contractual in nature and subject to contract-law standards." *State v. Butts*, 112 Ohio App.3d 683, 679 N.E.2d 1170 (8th Dist. 1996). The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987). Contractual language giving rise to doubt or ambiguity must be interpreted against the party who used it. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 667 N.E.2d 949 (1996).

**{¶24}** Plea agreements should be construed strictly against the government. *United States v. Fitch*, 282 F.3d 364 (6th Cir. 2002). "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "When an allegation is made that a plea agreement has been broken, the defendant must merely show that the agreement was not fulfilled." *State v. Legree*, 61 Ohio App.3d 568, 573 N.E.2d 687 (6th Dist. 1988). A prosecutor's failure to comply with the terms of the plea agreement may, in some circumstances, render a defendant's plea involuntary and undermine the constitutionality of a conviction based upon that plea. *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621,

52 L.Ed.2d 136 (1977). Accordingly, we must identify the terms of the purported plea agreement before we can determine if the state breached the agreement. *State v. Winfield*, 5th Dist. Richland No. 2005-CA-32, 2006-Ohio-721.

{¶25} In the case at bar, the Criminal Rule 11(C) and (F) plea form signed by Emch, his attorney and the assistant prosecuting attorney, contained the following,

I, Daniel R. Emch, further state the following:

1) That I have had the opportunity to discuss these matters with my attorney;

2) That I have confidence in my attorney, and accept his representation of me in this matter;

3) That I have not been coerced or required to plead No Contest, and that no promises have been made to me by the Prosecuting Attorney, or anyone representing the State of Ohio; EXCEPT that:

•AGREED The State will recommend the Court select a term of thirty six months in the Ohio Department of Rehabilitation and Correction to be reserved in favor of Community Control Sanctions.

This agreement is conditioned upon the defendant not participating in any further criminal activity prior to sentencing.

I FURTHER UNDERSTAND THAT ANY AGREEMENTS CONCERNING SENTENCING HEREIN ARE ONLY BETWEEN MY ATTORNEY AND THE STATE OF OHIO; AND, THEY ARE NOT BINDING ON THE JUDGE HEREIN, TO WIT: JUDGE ELIZABETH LEHIGH THOMAKOS.

*Acknowledgement of No Contest Plea*, filed Sept. 20, 2022 at 5. [Docket Entry No. 52].

{¶26} At appellant's entry of plea hearing, the prosecutor described the State of Ohio's obligation under the plea agreement as follows:

> The State has agreed to move to amend the indictment to one count of aggravated assault, a felony of the fourth degree, one count of abduction, a felony of the third degree and one count of robbery a felony of the third degree. In exchange, Mr. Emch has agreed to plead no contest to those charges…And the State would recommend that Mr. Emch serve a term of thirty-six months in the Ohio Department of Rehabilitation and Corrections, to be reserved in favor of community control sanctions.

Plea T., Sept. 19, 2022 at 2.

{¶27} The record establishes that the indictment was amended in accordance with the state's representations. Although the state seemed to be suggesting to the trial judge that she not sentence Emch to community control sanctions, the prosecutor did tell the judge that he stood by his recommendation that Emch serve thirty-six months in prison and that the court reserve that in favor of community control sanctions. Sent. T., Nov. 10, 2022 at 3. Thus, the state fulfilled its promises under the terms of the plea agreement. Accordingly, the state did not breach the agreement.

{¶28} Emch's objection appears to be that the trial court did not follow the recommendation and sentence him to community control sanctions. However, even if the prosecutor's remarks could be construed as his disavowing the plea agreement, the trial judge never promised Emch that she would impose community control sanctions if he entered no contest pleas.

**{¶29}** It is well settled that the terms of a plea agreement do not bind the discretion of the trial court. *State v. Pettiford*, 12th Dist. Fayette No. CA2001-08-014, 2002-Ohio-1914. Crim.R. 11 does not anticipate that punishment will be the result of a successful bargain because sentencing is determined expressly either by statute or rests within the sound discretion of the trial court. *State v. Mathews*, 8 Ohio App.3d 145, 146, 456 N.E.2d 539 (10th Dist. 1982). Simply stated, final judgment on acceptance of a plea agreement and sentencing rests with the discretion of the trial court. *State v. Fraternal Order of Eagles, Aerie No. 1224*, 12th Dist. Clinton No. CA2017-08-011, 2018-Ohio-548, ¶ 6; *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6, *quoting State v. Buchanan,* 154 Ohio App.3d 250, 2003-Ohio-4772, 796 N.E.2d 1003, ¶ 13 (5th Dist.), *quoting State v. Pettiford*, at *3. "A trial court does not err by imposing a sentence greater than 'that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.'" *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6. (Citations omitted.)

**{¶30}** In the case at bar, the trial court informed Emch at the plea hearing of the possible sentences for each charge to which Emch was entering a no contest plea. The trial judge further informed Emch before he entered his pleas that the trial judge was not bound by the state's sentencing recommendation. The Criminal Rule 11(C) and (F) plea form signed by Emch, his attorney and the assistant prosecuting attorney, also advised him the trial court was not bound to follow the state's sentencing recommendation. Further, the trial judge explained her reasons for not accepting the recommendation for

community control sanctions in lieu of a prison term. The trial judge noted that she reviewed the pre-sentence investigation report and every witness statement. She noted that Emch's list of prior convictions for felony crimes of violence is probably the longest list of felony crimes of violence she had seen. The trial judge noted Emch's prior prison sentences, pattern of substance abuse, testing positive for marijuana at the PSI interview, and a risk assessment score of twenty-seven. Under the facts of this case, it is clearly apparent that the judge would have found in good conscience she could not accept community control sanctions as the disposition, regardless of anything the prosecutor agreed to during plea negotiations with Emch.

{¶31} In the present case, the trial judge in no way promised Emch that she would impose the recommended sentence. Accordingly, there is no indication that a "manifest injustice" has occurred warranting the withdrawal of Emch's post-sentence no contest plea.

{¶32} Emch's First and Third Assignments of Error are overruled.

II.

{¶33} After reviewing Emch's brief including his contentions, we have interpreted Emch's second assignment of error in the following manner: Emch's trial attorney's failure to object to a violation of his client's plea agreement constitutes ineffective assistance of counsel.

**Standard of Appellate Review**

{¶34} "To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S.

668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. In addition, to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020).

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to object to the state's breach of the plea agreement, the result of the proceeding would have been different.*

{¶35} As we have found in our disposition of Emch's First and Third Assignments of Error, the state did not breach the plea agreement. Accordingly, there is no reasonable probability that the result of the proceeding would have been different had trial counsel objected as Emch contends. Therefore, we do not find Emch was prejudiced by counsel's failure to object to the enforcement of the plea agreement.

{¶36} Emch's Second Assignment of Error is overruled.

{¶37} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

King, J., concur